**<u>EXHIBIT B</u>**
[<u>Blackline</u>]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| USA SYNTHETIC FUEL CORPORATION, *et al.*, | : | Case No. ~~15-____ (____~~ 15-10599 (MFW) |
|  | : | (Joint Administration ~~Pending~~) |
| Debtors.[1] | : |  |
|  | : | **RE: D.I. 6** |

---------------------------------------------------------------x

**ORDER (I) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AN ASSET PURCHASE AGREEMENT IN CONNECTION THEREWITH, (III) AUTHORIZING THE PAYMENT OF STALKING HORSE PROTECTIONS, (IV) SETTING BID DEADLINE, AUCTION (IF NEEDED) AND SALE APPROVAL HEARING DATES, (V) ESTABLISHING NOTICE PROCEDURES AND APPROVING FORMS OF NOTICE, AND (VI) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion (the "Motion"),[2] dated March 17, 2015, of USA Synthetic Fuel Corporation ("USFC") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), pursuant to sections 105, 362, 363, 365, 503 and 507 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: USA Synthetic Fuel Corporation (5258); Lima Energy Company (5661); and Cleantech Corporation (6023).  The corporate headquarters and the mailing address for each entity listed above is 312 Walnut Street, Suite 1600, Cincinnati, OH 45202.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

Delaware (the "<u>Local Rules</u>"), for, *inter alia*, (i) approval of procedures (the "<u>Bidding Procedures</u>") in connection with the sale of certain assets of the Debtors (the "<u>Bid Assets</u>"), (ii) authorization to enter into the Asset Purchase Agreement (as defined below) in connection therewith, (iii) authorization of the payment of Stalking Horse Protections (as defined below), (iv) the setting of the dates for the Bid Deadline (as defined below), Auction (as defined in the Bidding Procedures) (if needed) and Sale Approval Hearing (as defined below), (v) establishment of notice procedures and approval of forms of notice and (vi) approval of procedures related to the assumption and assignment of executory contracts and unexpired leases, all as more fully described in the Motion; and the Court having held a hearing to consider the relief requested herein (the "<u>Bidding Procedures Hearing</u>") with the appearances of all interested parties noted in the record of the Bidding Procedures Hearing; and upon the record of the Bidding Procedures Hearing, the *Declaration of Dr. Steven C. Vick in Support of First Day Relief* (the "<u>Vick Declaration</u>") [Docket No. ⸻2] and all of the proceedings before the Court, the Court finds and determines the following:

**FOUND AND DETERMINED THAT:**

        A.     The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

        B.     The Debtors have provided due and proper notice of the Motion and Bidding Procedures Hearing and no further notice is necessary. A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation,

with respect to the Bidding Procedures and Stalking Horse Protections) has been afforded to all interested persons and entities.

C.      The Debtors' proposed notices of the Bidding Procedures, the Auction, the Asset Purchase Agreement, the hearing to approve a sale (the "Sale") of the Bid Assets (the "Sale Approval Hearing") and the Sale is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

D.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Bid Assets.

E.      The Bidding Procedures and the Asset Purchase Agreement were each negotiated in good faith and at arm's length between the Debtors and the Stalking Horse Bidder (as defined below).   The process for selection of the Stalking Horse Bidder was fair and appropriate under the circumstances and is in the best interests of the Debtors' estates.

F.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order, including the Court's:  (i) approval of the Bidding Procedures; (ii) authorization to enter into that certain Asset Purchase Agreement for the Sale of certain assets of the Debtors (such assets, the "Bid Assets"), dated as of March 17, 2015 (the "Asset Purchase Agreement"), with Third Eye Capital Corporation (the "Stalking Horse Bidder"), attached as Exhibit C to the Motion (iii) authorization to pay a break-up fee and expense reimbursement (together, the "Stalking Horse Protections"), under the terms and conditions set forth in the Asset Purchase Agreement and the Bidding Procedures; (iv) setting the dates of the Bid Deadline, Auction (if needed) and Sale Approval Hearing; (v) establishment of notice

procedures and approval of forms of notice; and (vi) approval of procedures related to assumption and assignment of executory contracts and unexpired leases.

G.    The Stalking Horse Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

H.    If necessary, the payment of the Stalking Horse Protections, under this Order and upon the conditions set forth in the Asset Purchase Agreement and the Bidding Procedures, is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) and 507(a) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate; (d) material inducements for, and conditions necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to undertake the Sale of the Bid Assets; and (e) reasonably tailored to encourage, and not hamper, bidding for the Bid Assets.

I.    Entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties-in-interest herein.

J.    The Notice of Assignment and Cure (as defined below) is reasonably calculated to provide each counterparty to the contracts and leases proposed to be assumed and assigned (each an "Assumed Contract and Lease" and, collectively, the "Assumed Contracts and Leases") with proper notice of its potential assumption and assignment, any cure amounts relating thereto, and the Assignment Procedures.

K.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** are APPROVED, fully incorporated into this Order and the Debtors are authorized and directed to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

2.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

3.      The form of Notice of Assignment and Cure attached hereto as **<u>Exhibit 2</u>** is approved.

4.      The form of Sale Notice attached hereto as **<u>Exhibit 3</u>** is approved.

5.      Within five days after the entry of this Order or as soon thereafter as practicable, the Debtors will publish the Sale Notice (as defined below) once in the national edition of the *Wall Street Journal*.

6.      Within three days after the entry of this Order or as soon thereafter as practicable, the Debtors will serve the Motion, Asset Purchase Agreement, Bidding Procedures, this Order and the Sale Notice on (a) the Office of the United States Trustee for the District of Delaware; (b) all federal, state, county and local and foreign regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (c) the Internal Revenue Service; (d) the Securities & Exchange Commission; (e) the United States Attorney General; (f) each of the non-Debtor counterparties to the Assumed Contracts and Leases; (g) counsel to the Stalking Horse Bidder, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10019 (Attn: Jay M. Goffman and Shana A. Elberg); (h) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the

Bid Assets; (i) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these cases; and (j) all other known creditors of the Debtors (collectively, the "<u>Sale Notice Parties</u>").

       7.     Service of the Motion, Asset Purchase Agreement, Bidding Procedures, this Order and the Sale Notice on the Sale Notice Parties and applicable interested bidders in the manner described in the Motion and in the preceding paragraph constitutes good and sufficient notice of the Auction, the Sale Approval Hearing, the Sale and the relief requested in the Motion. No other or further notice is required.

       8.     The Asset Purchase Agreement is a Qualified Bid (as defined in the Bidding Procedures). The Stalking Horse Bidder shall constitute a Qualified Bidder (as defined in the Bidding Procedures).

       9.     If no Qualified Bids with respect to the Bid Assets other than the Asset Purchase Agreement are timely received on or before the Bid Deadline, the Debtors shall not conduct the Auction with respect to the Bid Assets, and instead shall seek approval of the sale of the Bid Assets pursuant to the Asset Purchase Agreement at the Sale Approval Hearing.

       10.    In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Asset Purchase Agreement, an Auction shall be conducted at the offices of the Debtors' proposed counsel, Morris, Nichols, Arsht & Tunnell LLP on **[_____], 2015 at 10:00 a**.m. (**Eastern Time**), or such later time on such day or such other place as the Debtors shall notify all Qualified Bidders.

       11.    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

12.     Within one business day after the conclusion of the Auction, the Debtors shall file a notice (i) identifying the Successful Bidder(s) (as defined in the Bidding Procedures) and (ii) providing adequate assurance materials demonstrating the ability of the Successful Bidder(s) to perform under the Assumed Contracts and Leases (the "Notice of Successful Bidder").

13.     <u>Objection Deadline to Sale Order</u>.  Objections to the relief sought in the Sale Order shall be in writing, filed and served, so as to actually be received by (i) the Debtors; (ii) proposed counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, DE 19899-1347 (Attn: Robert J. Dehney and Andrew R. Remming); (iii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), 884 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attention: David L. Buchbinder); (iv) counsel to the Stalking Horse Bidder, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10019 (Attn: Jay M. Goffman and Shana A. Elberg); and (v) proposed counsel to any official committee appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (collectively, the "Service Parties") by **[_____], 2015 at 12:00 p.m**. (**Eastern Time**); provided, however, that objections to the Auction or the selection of the highest and best bid shall be in writing, filed and served so as to be actually received by the Service Parties, by **[_____], 2015 at 12:00 p.m**. (**Eastern Time**).

14.     The sale approval hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom [__], 824 North Market Street, [_] Floor, Wilmington, Delaware 19801, on **[_____], 2015 at [__:00 __.m.]** (**Eastern Time**) or such other date and time that the Court may later direct (the "Sale Approval Hearing"); provided, however, that the Sale Approval Hearing may be adjourned, from time to time, without further

notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

15.     For the avoidance of any doubt, the Stalking Horse Bidder may continue to solicit any personnel of the Debtors, provided that any agreement for future employment of such personnel shall be contingent on the closing of a sale with the Stalking Horse Bidder.

16.     As soon as practicable after the conclusion of the Auction, but no later than before the Sale Approval Hearing, the Debtors shall file a final form of order approving the Sale as agreed upon between the Debtors and the Successful Bidder(s).

17.     <u>Asset Purchase Agreement</u>.  The Debtors are authorized to enter into the Asset Purchase Agreement.

18.     <u>Stalking Horse Protections</u>.  The Stalking Horse Bidder shall be entitled to receive the Stalking Horse Protections in accordance with the terms and conditions of the Asset Purchase Agreement and the Bidding Procedures <u>upon the expiration of the objection period to the expense reimbursement portion of the Stalking Horse Protections</u>, <u>provided</u>, <u>however</u>, that under no circumstances will the Stalking Horse Bidder receive the Stalking Horse Protections unless an Alternative Transaction is approved by the Court and such sale closes<u>, provided further, however, that notwithstanding anything to the contrary contained in the Asset Purchase Agreement and the Bidding Procedures, the Stalking Horse Bidder shall not be entitled to receive any Stalking Horse Protections greater than $750,000 in the aggregate</u>.  The Stalking Horse Protections, once earned in accordance with the Asset Purchase Agreement, shall (i) survive termination of the Asset Purchase Agreement and (ii) to the extent not paid by the Successful Bidder(s) when due, shall constitute superpriority administrative expense claims in the Debtors' chapter 11 cases pursuant to sections 503(b), 507(a)(1) and 507(b) of the Bankruptcy Code until

paid to the Stalking Horse Bidder.  To the extent the Stalking Horse Protections are not paid by

the Successful Bidder(s) when due, (x) the Stalking Horse Bidder shall have a direct cause of

action against such Successful Bidder(s) and (y) the Debtors are authorized and directed to pay

to the Stalking Horse Bidder the Stalking Horse Protections under the terms set forth in the Asset

Purchase Agreement, without the need for any application, motion, or further order of the Court.

19.    <u>Assignment Procedures</u>.    The Assignment Procedures set forth in the

Motion are hereby approved.  As soon as practicable after the date this Order is entered, the

Debtors will file with the Court, a schedule (the "<u>Assignment Schedule</u>"), in form and substance

reasonably acceptable to the Stalking Horse Bidder, listing all the Assumed Contracts and Leases

proposed to be assumed and assigned pursuant to the Asset Purchase Agreement on the date the

Sale Order is entered (the "<u>Closing Date Contracts</u>"); provided, however, that the presence of a

contract, lease or agreement listed on the Assignment Schedule does not constitute an admission

that such contract, lease or agreement is an executory contract.  The Debtors reserve all of their

rights, claims and causes of action with respect to the contracts, leases and agreements listed on

the Assignment Schedule.  The Assignment Schedule may be modified at the request of the

Stalking Horse Bidder.  The Debtors will serve each of the non-Debtor counterparties to the

Assumed Contracts and Leases a notice, which shall be in form and substance acceptable to the

Stalking Horse Bidder (a "<u>Notice of Assignment and Cure</u>"), by first class mail, that will include

(i) the title of the Assumed Contracts and Leases to be assumed, (ii) the name of each

counterparty to the Assumed Contracts and Leases, (iii) any applicable cure amounts, (iv) that

the assignee is the Stalking Horse Bidder or its designee, or any other Successful Bidder(s), (v)

adequate assurance materials demonstrating the ability of the Stalking Horse Bidder to perform

under the Assumed Contracts and Leases, and (vi) the Assignment and Cure Objection Deadline (defined below).

20.      Any objections to the assumption and/or assignment of any Assumed Contracts and Leases identified on a Notice of Assignment and Cure, including to the cure amount set forth on such notice, must be in writing, filed with the Court, and actually be received by the Service Parties no later than fourteen (14) days after such Notice of Assignment and Cure is mailed to the affected party, as indicated by the date noted on such Notice of Assignment and Cure (the "Assignment and Cure Objection Deadline"), and must set forth a specific default under the Assumed Contracts and Leases and claim a specific monetary cure amount that differs from the amount, if any, specified by the Debtors in such Notice of Assignment of Cure.

21.      Resolution of Objections to Assumption and/or Assignment of Assumed Contracts and Leases.  If no objection is received by the Assignment and Cure Objection Deadline, then the assumption and assignment is authorized and the cure amounts set forth on the Notice of Assignment and Cure shall be binding upon the non-Debtor counterparty to the Assumed Contracts and Leases for all purposes and will constitute a final determination of total cure amounts required to be paid to the counterparty in connection with any potential assignment of such Assumed Contracts and Leases to the Successful Bidder.  In addition, each non-Debtor counterparty to such Assumed Contracts and Leases shall be forever barred from objecting to the cure information set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure or other amounts with respect to the Assumed Contracts and Leases arising or relating to any period prior to such assumption or assignment.

22.      If no objections to the assumption or assumption and assignment are received by the Assignment and Cure Objection Deadline, counsel for the Debtors may submit to

the Court a certificate of no objection (the "Certificate of No Objection") and serve the Certificate of No Objection on the counterparty to the Assumed Contracts and Leases. The assumption and assignment of the Closing Date Contracts may be approved by the Sale Order.

23.     If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at a later date set by the Court. At the sole discretion of the Stalking Horse Bidder or the Successful Bidder(s), the pendency of a dispute relating to cure amounts will not prevent or delay the assumption and assignment of any Assumed Contracts and Leases. If an objection is filed only with respect to the cure amount listed on the Notice of Assignment and Cure, in the sole discretion of the Stalking Horse Bidder or the Successful Bidder(s), the Debtors may proceed with the assumption and assignment of the Assumed Contract and Lease and resolve the dispute regarding the cure amount at a later date as set by the Court. Any such dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court. The Debtors intend to cooperate with the counterparties to the Assumed Contracts and Leases to attempt to reconcile any difference in a particular cure amount.

24.     At the conclusion of the Auction the Debtors will file with the Bankruptcy Court the Notice of Successful Bidder. Objections to the assumption, assignment, and/or transfer of an Executory Contract and/or Unexpired Lease to the Successful Bidder (not the Stalking Horse Bidder)[3] solely on the basis of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "Adequate Assurance Objection") must, by **[__] a.m./p.m. (Prevailing Eastern Time) on**

---

[3]     The Debtors will provide adequate assurance material regarding the Stalking Horse Bidder as part of the Notice of Assignment and Cure. Any objections to the ability of the Stalking Horse Bidder to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code must be filed by the Assignment and Cure Objection Deadline as set forth above.

[_____], **2015**, be filed with the Bankruptcy Court and served upon the Debtors and their counsel and the Successful Bidder.

25.    Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

26.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

27.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to deliver any notice provided for in the Asset Purchase Agreement and allow the Stalking Horse Bidder to take any and all actions permitted under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

28.    To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

29.    The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.  To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

Dated: _____, 2015
          Wilmington, Delaware

_____
_____, 2015
THE HONORABLE _____

MARY F. WALRATH

UNITED STATES BANKRUPTCY JUDGE

8950261

**EXHIBIT 1**
[Bidding Procedures]

## BIDDING PROCEDURES

USA Synthetic Fuel Corporation and its affiliates Lima Energy Company and Cleantech Corporation (collectively, the "Debtors" or "Seller"), debtors in possession in jointly administered chapter 11 cases (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") have entered into a stalking-horse asset purchase agreement, dated March 17, 2015 (the "Asset Purchase Agreement")[1] with Third Eye Capital Corporation (the "Stalking Horse Bidder").[2]

Pursuant to the Asset Purchase Agreement, and subject to the terms and conditions thereof, the Stalking Horse Bidder has agreed to acquire the Bid Assets (as set forth in the Asset Purchase Agreement) from the Debtors and assume certain of the Debtors' liabilities. To attain the highest and best offer for the Debtors' assets, the Debtors propose these Bidding Procedures to solicit bids for the Bid Assets.

**Any interested bidder should contact, as soon as practical, the Debtors' proposed investment banker, Asgaard Capital ("Asgaard"), as follows:**

ASGAARD CAPITAL
1934 Old Gallows Road, Suite 350
Vienna, VA 22182
Phone: 703-752-6252
Attn: Charles C. Reardon (email: creardon@asgaardcapital.com)
-and-
Jeffrey D. Henderson (email: jhenderson@asgaardcapital.com)

These Bidding Procedures describe, among other things, (a) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (b) the conduct of the Auction (as defined below), if necessary, (c) the selection of the Successful Bidder(s) (as defined below), and (d) the Court approval of the sale of the Bid Assets to the Successful Bidder(s).

### Participation Requirements

In order to participate in the bidding process, a person interested in acquiring the Bid Assets (a "Potential Bidder") must first deliver to (i) Asgaard; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, DE 19899-1347 (Attn: Robert J. Dehney and Andrew R. Remming) (together, the "Notice Parties"):

    (a)    Confidentiality Agreement.   An executed confidentiality agreement in form and substance acceptable to Seller and its counsel; and

---

[1] All terms used but not defined herein have the meaning ascribed to such term in the Stalking Horse APA.

[2] These Bidding Procedures were approved by the Bankruptcy Court on [_____], 2015 [Docket No. __].

(b)    <u>Identification of Potential Bidder</u>.  Identification of the Potential Bidder and any Principals (as defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the auction and the contemplated transaction.

Upon the receipt from a Potential Bidder of the documents and information required under subparagraphs (a)-(b) above, a Potential Bidder may receive due diligence information from the Seller, access to the Seller's confidential electronic data room concerning the Bid Assets (the "<u>Data Room</u>") and an electronic copy of the Asset Purchase Agreement and proposed Sale Order.

<u>Designation as Qualified Bidder</u>

A "<u>Qualified Bidder</u>" is a Potential Bidder that:

(a)    delivers the documents described in subparagraphs (a) and (b) above;

(b)    delivers written evidence satisfactory to Seller that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction without delay, including:

(i)    current financial statements (audited if they exist);

(ii)   contact names and numbers for verification of financing sources; and

(iii)  evidence of internal resources and proof of any underwritten debt or equity funding commitments that are needed to close the contemplated transaction; and

(c)    Seller determines is reasonably likely to submit a *bona fide* offer that (standing on its own or in combination with one or more other offers) would result in greater total consideration being received for the benefit of Seller's creditors than under the Asset Purchase Agreement and be able promptly to consummate a sale if selected as a Successful Bidder (as defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(c) above, Seller, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Third Eye Capital, the Stalking Horse Bidder and any other assignee of Third Eye Capital's credit bid rights are each a Qualified Bidder.

<u>Access to Due Diligence Materials</u>

If Seller determines that a Potential Bidder that has satisfied the participation requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence

information (including access to the Data Room) or additional non-public information shall terminate.  Seller shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

Due Diligence From Bidders

Each Potential Bidder and Qualified Bidder (each, a "<u>Bidder</u>") shall comply with all reasonable requests for additional information and due diligence access by Seller or its advisors regarding such Bidder and its contemplated transaction.  Failure by a Potential Bidder to comply with the requests for additional information and due diligence access will be a basis for Seller to determine that the Potential Bidder is not a Qualified Bidder.  Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for Seller to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

**Bidding Process**

Seller and its advisors shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Bid Assets (collectively, the "<u>Bidding Process</u>").  Subject to approval by the Stalking Horse Bidder, in its sole discretion, the Debtors shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

Bid Deadline

The deadline for submitting bids by a Qualified Bidder shall be 55 days after the Petition Date, at 5:00 p.m. (Eastern Time) (the "<u>Bid Deadline</u>").

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "<u>Bid</u>") shall deliver written copies of its bid to the Notice Parties, so that the bid is actually received by the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

Bid Requirements

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by Seller to satisfy each of the following conditions:

(a)    <u>Good Faith Deposit</u>: Each Bid must be accompanied by a deposit (the "<u>Good Faith Deposit</u>") by wire transfer to an escrow agent selected by the Debtors in an amount of not less than ten percent (10%) of the amount of the Bid.  No Good Faith Deposit shall be made by or is otherwise required of the Stalking Horse Bidder.

(b)     <u>Minimum Overbid</u>:  A Bid must provide for aggregate consideration that is equal to or greater than $500,000 more than the Purchase Price under the Asset Purchase Agreement with the Stalking Horse Bidder.   The Debtors may consider one or more Bids in evaluating compliance with this Bid Requirement.

(c)     <u>Irrevocable</u>:  A Bid must be irrevocable until two (2) business days after the Bid Assets have been sold pursuant to the Closing of the sale approved by the Bankruptcy Court (the "<u>Termination Date</u>") and must be in the form of an asset purchase agreement signed by the Qualified Bidder.

(d)     <u>The Same or Better Terms</u>:   The Bid shall propose a contemplated transaction involving substantially all the Bid Assets and Assumed Liabilities under the Asset Purchase Agreement, and shall contain substantially all of the material terms and conditions contained in the Asset Purchase Agreement, provided, however, that any variations from one or more material terms (including, but not limited to, an offer to purchase less than substantially all the Bid Assets) must, in the aggregate constitute an improvement, as determined by Seller, upon such term or terms as set forth in the Asset Purchase Agreement.  The Bid must be on terms that, in Seller's business judgment, are better than the terms of the Asset Purchase Agreement, taking into account the quality and type of consideration being offered and the certainty of performing and closing in a timely manner.   A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "<u>Contemplated Transaction Documents</u>"). A Bid shall include copies of the Asset Purchase Agreement and the proposed Sale Order marked to show all changes requested by the Bidder (including those related to Purchase Price) and a list of all contracts and leases proposed to be assumed and assigned.   The Contemplated Transaction Documents must include a written commitment satisfactory to Seller of the Bidder's financial ability and intention to promptly complete the transaction without delay and contain a representation that the Qualified Bidder shall make all necessary regulatory filings, if any, and pay all costs and expenses of such filings (including Seller's costs and expenses).

(e)     A Bid may not be conditioned on obtaining financing or any corporate, regulatory, stockholder or internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Asset Purchase Agreement.

(f)     <u>Corporate Authority</u>:   A Bid must include written evidence of the Qualified Bidder's chief executive officer or other appropriate senior

4

executive's approval of the contemplated transaction; provided, however, that if the Qualified Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Qualified Bidder must furnish written evidence reasonably acceptable to Seller of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "<u>Principals</u>").

(g)  <u>Financing Sources</u>.  A Bid must contain written evidence satisfactory to Seller that demonstrates the Qualified Bidder has the necessary financial ability to close the contemplated transaction without delay and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction.   Such information should include, *inter alia*, the following:

(i)  the Qualified Bidder's current financial statements (audited if they exist);

(ii)  contact names and numbers for verification of financing sources;

(iii)  evidence of the Qualified Bidder's internal resources and proof of any underwritten debt or equity funding commitments that are needed to close the contemplated transaction; and

(iv)  any such other form of financial disclosure or credit quality support information or enhancement reasonably acceptable to or requested by Seller demonstrating that such Qualified Bidder has the ability to close the contemplated transaction without delay; provided, however, that Seller shall determine, in its reasonable discretion, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Qualified Bidder's financial qualifications.

(h)  <u>No Fees Payable to Qualified Bidder</u>:  A Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures.

(i)  <u>Stalking Horse Protections</u>:  A Bid must provide for the payment of the Stalking Horse Protections by such Qualified Bidder.  The Stalking Horse Bidder shall not be required to pay for or provide any Stalking Horse Protections.

5

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid" if Seller believes, in its reasonable discretion, that such Bid would be consummated if selected as a Successful Bid (as defined below).  For purposes hereof, the Asset Purchase Agreement is a Qualified Bid.

Each Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Bid Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Bid Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Bid Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder(s), the asset purchase agreement(s) with such Successful Bidder(s).

In the event that any Bid is determined by Seller not to be a Qualified Bid, the Qualified Bidder shall be refunded its Good Faith Deposit within three (3) business days after such determination.

### Auction

Only if a Qualified Bid (other than the Stalking Horse Bidder's) is received by the Bid Deadline, shall Seller conduct an auction (the "Auction") to determine the highest and best bid(s) with respect to the Bid Assets under the Asset Purchase Agreement.  Seller shall provide the Stalking Horse Bidder and all Qualified Bidders with copies of all Qualified Bids at least 1 day prior to the Auction.  The Auction shall commence on the date that is 58 days after the Petition Date at 10:00 a.m. (prevailing Eastern time).

No later than 4:00 p.m. (prevailing Eastern time) on the date that is 57 days after the Petition Date, Seller will notify all Qualified Bidders of (i) the highest and best Qualified Bid (or combination of Qualified Bids), as determined by Seller (the "Baseline Bid") and (ii) the time and place of the Auction.  If, however, no other such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Stalking Horse Bidder will be the Successful Bidder, the Asset Purchase Agreement will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek approval of and authority to consummate the Proposed Sale contemplated by the Asset Purchase Agreement.

The Auction shall be conducted according to the following procedures:

       (a)     Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction.  The Auction shall be conducted openly and all creditors shall be entitled to attend.  As described below, during the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of at least $500,000 higher than the

immediately preceding prevailing bid.[3]   Bidding at the Auction shall be transcribed or videotaped.  Unless otherwise set forth herein, Seller may conduct the Auction in the manner they determine will result in the highest and best offer(s) for the Bid Assets.

      (b)     Seller Shall Conduct the Auction

Seller and its professionals shall direct and preside over the Auction.  At the start of the Auction, Seller shall describe the terms of the Baseline Bid.  The determination of which Qualified Bid(s) constitutes the Baseline Bid shall take into account any factors Seller reasonably deems relevant to the value of the Qualified Bid(s) to the estate, including, *inter alia*, the following:  (A) the amount and nature of the consideration; (B) the proposed assets to be purchased and the assumption of any liabilities; (C) the ability of the Qualified Bidder(s) to close the proposed transaction(s) without delay; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction(s) on any actual or potential litigation; (G) the net economic effect of any changes from the Asset Purchase Agreement, if any, contemplated by the Contemplated Transaction Documents, and (H) the net after-tax consideration to be received by Seller's bankruptcy estates (collectively, the "Bid Assessment Criteria").  All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders.  Seller shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid(s).

      (c)     Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to Seller's announcement of the Baseline Bid.  To submit an Overbid for purposes of the Auction, a Qualified Bidder must comply with the following conditions:

      (i)     Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $500,000 or such lower amount as determined by the Seller during the Auction (provided, however, that such bid increments shall in no event be lower than $100,000) plus the aggregate amount of the Stalking Horse Protections.  Any subsequent bids by the Stalking Horse Bidder will be credited with the full amount of the Stalking Horse Protections.

      (ii)     Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply.  Any Overbid made by a Qualified Bidder must

---

[3]     The Debtors may reduce the bid increments during the Auction; provided, however, that such bid increments shall in no event be lower than $100,000.

remain open and binding on the Qualified Bidder until and unless (A) Seller accepts a higher Qualified Bid as an Overbid and (B) such Overbid is not selected as the Back-Up Bid (as defined below).

To the extent not previously provided (which shall be determined by Seller), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to Seller) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid without delay.

(iii)    Announcing Overbids

Seller shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to Seller's bankruptcy estates based on, *inter alia*, the Bid Assessment Criteria.

(d)    Additional Procedures

Seller may adopt rules for the Auction, subject to the consent of the Stalking Horse Bidder in its sole discretion, at or prior to the Auction that, in its reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order.  All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.  Subject to the prior consent of the Stalking Horse Bidder in its sole discretion, Seller may adjourn without further notice the Auction (and Sale Hearing) if in its reasonable discretion an adjournment will better promote the goals of the Auction and allow parties to make progress toward modifications of any Qualified Bid that could result in a higher and better Qualified Bid.

(e)    Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

(f)    Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and Seller shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) immediately identify the highest and best offer or collection of offers for the Bid Assets (the "Successful Bid(s)") and the entity or entities submitting such Successful Bid(s) (the

"Successful Bidder(s)"), which highest and best offer will provide the greatest amount of net value to Seller, and the next highest and best offer or collection of offers after the Successful Bid(s) (the "Back-up Bid(s)") and the entity or entities submitting such Back-Up Bid(s) (the "Back-up Bidder(s)"), and advise the Qualified Bidders of such determinations.  If the Stalking Horse Bidder's final bid is deemed to be highest and best at the conclusion of the Auction, the Stalking Horse Bidder will be the Successful Bidder, and such bid, the Successful Bid.

### Acceptance of Successful Bid(s)

Seller shall sell the Bid Assets to the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Bankruptcy Court after the Sale Hearing.  Seller's presentation of a particular Qualified Bid (or Qualified Bids) to the Bankruptcy Court for approval does not constitute Seller's acceptance of the bid(s).  Seller shall be deemed to have accepted a Bid (or Bids) only when the Bid (or Bids) has been approved by the Bankruptcy Court at the Sale Hearing.  All interested parties reserve their right to object to Seller's selection of the Successful Bidder(s) (including the assignment of any such objector's Assigned Contract thereto, provided, however, that any objection to such assignment on the basis of the cure amount must be made and/or reserved as set forth in the order approving these Bidding Procedures).

### Credit Bid

Third Eye Capital shall be entitled to credit bid all or a portion of a secured claim against Seller that Third Eye Capital has a right to.  Third Eye Capital shall be entitled to assign its credit bid to any third party designated by Third Eye Capital.

Notwithstanding anything to the contrary in the Asset Purchase Agreement, without obtaining the consent of any Party thereto, the Stalking Horse Bidder may assign all or part of its rights under the Asset Purchase Agreement to, and all or part of its obligations under the Asset Purchase Agreement may be assumed by, any of its Affiliates or to its lenders as collateral security, or to a third party, provided that if such assignment and/or assumption takes place, the Stalking Horse Purchaser shall continue to be liable jointly and severally with such assignee for all of its obligations hereunder.

### Stalking Horse Protections

In the event that the Stalking Horse Bidder is entitled to payment of the Stalking Horse Protections under the terms of the Asset Purchase Agreement, the Successful Bidder(s) shall promptly pay, within ten (10) days of the closing of its purchase agreement, the Stalking Horse Protections to the Stalking Horse Bidder.  In the event the Stalking Horse Protections are not timely paid by the Successful Bidder(s) when due, the Seller shall pay such Stalking Horse Protections from the proceeds received at the closing of the sale(s) as an expense of the sale(s) and the Seller shall have a claim against the Successful Bidder(s) for recovery of such amount.

The Seller's contingent obligation to pay the Stalking Horse Protections shall survive termination of the Asset Purchase Agreement, dismissal or conversion of the Chapter 11 Case, and confirmation of any plan of reorganization or liquidation, and shall constitute an administrative expense of the Seller under Sections 503(b) and 507(a) of the Bankruptcy Code.

## As Is, Where Is

The sale of the Bid Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except as provided in any agreement with respect to the sale or sales approved by the Bankruptcy Court.

## Free Of Any And All Interests

Except as otherwise provided in the Asset Purchase Agreement or another Successful Bidder's purchase agreement, all of Seller's right, title and interest in and to the Bid Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code § 363 with such Interests to attach to the net proceeds of the sale of the Bid Assets.

## Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on a day that is one (1) business day following the Auction Date or on such date as may be established by the Bankruptcy Court. Following the approval of the sale of the Bid Assets to the Successful Bidder(s) at the Sale Hearing, if any Successful Bidder fails to consummate an approved sale within fifteen (15) days after entry of an Order approving the Sale, Seller, unless such Order approving the Sale is otherwise stayed by order of a court with competent jurisdiction, shall be authorized, but not required, to deem the Back-up Bid(s), as disclosed at the Sale Hearing, the Successful Bid(s), and Seller shall be authorized, but not required, promptly to consummate the sale with the Back-up Bidder(s) without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder(s), the Debtors reserve the right to seek all available remedies from the defaulting Successful Bidder(s), subject to the terms of the applicable purchase agreement.

## Return of Good Faith Deposit

Good Faith Deposit(s) of the Successful Bidder(s) shall be applied to the purchase price of such transaction(s) at Closing. The Good Faith Deposit(s) of the Back-up Bidder(s) shall be held in an escrow account until five (5) days after the Closing of the transaction(s) contemplated by the Successful Bid(s), and thereafter returned to the Back-up Bidder(s). Good Faith Deposits of all other Qualified Bidders shall be held in an escrow account until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective bidders. If a Successful Bidder(s) or a Back-up Bidder(s), as appropriate, fails to consummate an approved sale because of a breach or failure to perform on the part of such Bidder, Seller shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by such Bidder. The Stalking Horse Bidder shall not be required to provide a deposit.

## Modifications

Seller may (a) determine which Qualified Bid(s), if any, represent the highest and best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified

Bid(s), any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of Seller, its bankruptcy estate and creditors.  Seller shall not make material modifications to these Bidding Procedures without Bankruptcy Court approval, provided however, that, to the extent not contrary to the order approving the Bidding Procedures and, subject to approval by the Stalking Horse Bidder in its sole discretion, Seller may make other non-material modifications to such procedures if, in its reasonable judgment, such modifications would be in the best interests of Seller's estates and promote an open and fair sale process.

8950261

**<u>EXHIBIT 2</u>**
[<u>Notice of Assignment and Cure</u>]

(Intentionally Omitted)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------   x
                                                               :
In re                                                          :   Chapter 11
                                                               :
USA SYNTHETIC FUEL CORPORATION, et al.,¹                       :   Case No. 15-10599 (MFW)
                                                               :
            Debtors.                                           :   (Jointly Administered)
                                                               :
                                                               :   Assignment/Cure Objections Due: TBD
                                                               :   Adequate Assurance Objections Due: TBD
------------------------------------------------------------   x   Sale Hearing: TBD
```

**NOTICE OF PROPOSED (I) ASSUMPTION, ASSIGNMENT, AND/OR TRANSFER OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On March 17, 2015, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      On [●], 2015, the Bankruptcy Court entered an order (the "Bidding Procedures Order"), pursuant to sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, in the Debtors' chapter 11 cases approving the Debtors' motion, dated March 17, 2015 [D.I. [●]] (the "Motion"),² approving, among other things: (i) Bidding Procedures relating to the sale of substantially all of the Debtors' assets (the "Bid Assets") pursuant to an asset purchase agreement (the "Asset Purchase Agreement") with Third Eye Capital Corporation (the "Stalking Horse Bidder") and (ii) establishing procedures relating to the assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder of the Bid Assets, including the fixing of cure amounts (the "Cure Amounts").

3.      Attached hereto as **Exhibit A** is a list of executory contracts, unexpired leases, and other agreements (each an "Assumed Contract and Lease" and, collectively, the "Assumed Contracts and Leases")  that might be assumed and assigned by the Debtors to the Successful Bidder of the Bid Assets pursuant to the Sale Order and the corresponding Cure Amount.  Information regarding the ability of the Stalking Horse Bidder to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code is attached hereto as **Exhibit B**.

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: USA Synthetic Fuel Corporation (5258); Lima Energy Company (5661); and Cleantech Corporation (6023).  The corporate headquarters and the mailing address for each entity listed above is 312 Walnut Street, Suite 1600, Cincinnati, OH 45202.

²       Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4.      The Debtors believe that any and all defaults and actual pecuniary losses under the Assumed Contracts and Leases that are required to be cured under the Bankruptcy Code can be cured by the payment of the Cure Amounts listed on **Exhibit A** annexed hereto.

5.      Any objections to (i) the assumption, assignment, and/or transfer of an Assumed Contract and Lease, (ii) the amount asserted as the applicable Cure Amount, or (iii) the ability of the Stalking Horse Bidder to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (each, an "Assignment/Cure Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.

6.      To be considered a timely Assignment/Cure Objection, the Assignment/Cure Objection must, by **4:00 p.m. (Prevailing Eastern Time) on [●], 2015**, be filed with the Bankruptcy Court and served upon:

> (a) the Debtors, 312 Walnut Street, Suite 1600, Cincinnati, OH 45202; (b) counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney, Esq.; (c) counsel to the Stalking Horse Bidder, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10019, Attn: Jay M. Goffman, Esq., (d) Asgaard Capital LLC, 1934 Old Gallows Road, Suite 350, Vienna, VA 22182, Attn: Charles C. Reardon; (e) counsel to any statutory committee appointed in the Debtors' cases and (f) Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801, Attn: David L. Buchbinder, Esq. (collectively, the "Objection Notice Parties").

7.      If an Assignment/Cure Objection is timely filed, a hearing with respect to that objection shall be held before the Honorable [●], United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801, Courtroom #[●], [●] Floor on [●] 2015, at [●] **a.m./p.m. (Prevailing Eastern Time)** or such other date and time as the Debtors may schedule with the Court (the "Sale Hearing").

8.      At the conclusion of the Auction the Debtors will file with the Bankruptcy Court a notice identifying the Successful Bidder.  Objections to the assumption, assignment, and/or transfer of an Assumed Contract and Lease to the Successful Bidder (not the Stalking Horse Bidder)[3] solely on the basis of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "Adequate Assurance Objection") must, by **[●] a.m./p.m. (Prevailing Eastern Time) on [●], 2015**, be filed with the Bankruptcy Court and served upon the Debtors and their counsel and the Successful Bidder.

9.      The Debtors may adjourn the Sale Hearing from time to time without further notice to parties-in-interest other than by announcement in the agenda filed by the Debtors or in open court on the date scheduled for the Sale Hearing.

10.      At the Sale Hearing, the Debtors will seek the entry of an order which provides, among other things, as follows:

> No sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition Debtors' assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-

---

[3]      Any objections to the ability of the Stalking Horse Bidder to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code must be filed by the deadline to file Assignment/Cure Objections as set forth above.

Debtor party to such Assumed Contracts; (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assumed Contracts, or modification of any term or condition upon the assignment of an Assumed Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e). The entry of this Order constitutes the consent of the non-Debtor parties to the Assumed Contracts to the assumption and assignment of such agreements. All Assumed Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the appropriate cure amount, if any, by the Debtors.

11.    10.**All objections must state with specificity the nature of such objection, including the Claimed Cure Amount, if applicable. UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUTPCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION (INCLUDING APPROVING THE ASSUMPTION, ASSIGNMENT, AND/OR TRANSFSER OF THE APPLICABLE ASSUMED CONTRACT AND LEASE) WITHOUT FURTHER HEARING AND NOTICE.**

12.    11.Parties that fail to file and serve timely Assignment/Cure Objections or Adequate Assurance Objections (i) shall be forever barred from objecting to the Cure Amount or the ability of the Successful Bidder to provide adequate assurance of future performance and from asserting any additional cure or other amounts with respect to such Assumed Contract and Lease and the Debtors shall be entitled to rely solely upon the Cure Amount, (ii) shall be deemed to have consented to the assumption, assignment, and/or transfer of such Assumed Contract and Lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder, or any other assignee of the relevant Assumed Contract and Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, under such Assumed Contract and Lease, and (iii) to the extent the assumption and assignment of the Assumed Contract and Lease may constitute a default under any related documents, such default shall be deemed to have been irrevocably waived.

13.    12.Any party that fails to object to the assumption and assignment of the Assumed Contracts and Leases shall be barred, enjoined, and prohibited from asserting any claim or debt against the Debtors or their property or estates other than the Cure Amounts, if any, and/or from offsetting, seeking to offset, recoup, deduct, or set-off any claims such party may have against the Debtors from any amounts that may be or may become due in the future to the Successful Bidder under such Assumed Contract and Lease.

14.    13.The Debtors or the Successful Bidder, as the case may be, may determine to add or exclude any Assumed Contract and Lease from the list of Bid Assets through the date of Closing. To the extent that an Assumed Contract and Lease is added, the affected party shall receive a separate notice and an opportunity to object accordingly.

15.    14.The Debtors reserve the right to modify the Cure Amounts at any time prior to the Sale Hearing. To the extent that the Debtors modify the Cure Amounts, the affected party shall receive a separate notice and an additional opportunity to object to such modified Cure Amount.

**16.**    ~~15.~~**IF NO CURE AMOUNTS ARE DUE UNDER AN ASSUMED CONTRACT AND LEASE, AND THE NON-DEBTOR PARTY TO THE ASSUMED CONTRACT AND LEASE DOES NOT OTHERWISE OBJECT TO THE DEBTORS' ASSUMPTION, ASSIGNMENT, AND/OR TRANSFER OF THE ASSUMED CONTRACT AND LEASE, NO FURTHER ACTION NEED BE TAKEN ON THE PART OF THAT NON-DEBTOR PARTY.**

**17.**    ~~16.~~This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Bidding Procedures Order, the Bidding Procedures, the Sale Order and the Asset Purchase Agreement, which shall control in the event of any conflict.  The Debtors encourage parties-in-interest to review such documents in their entirety. Copies of the Bidding Procedures Order, the Bidding Procedures, the Sale Order and the Asset Purchase Agreement and other relevant documents are posted on: (a) the Bankruptcy Court's website, www.deb.uscourts.gov; and (b) are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 N. Market Street, Wilmington, Delaware 19801.

**18.**    ~~17.~~The Debtors' decision to sell, assign, and/or transfer to the Successful Bidder the Assumed Contracts and Leases is subject to Court approval and the Closing.  Accordingly, prior to and/or absent such Closing, any of the Assumed Contracts and Leases shall not be deemed to be sold, assigned, and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the list of Assumed Contracts and Leases shall not constitute or be deemed to be a determination or admission by the Debtors or any Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated:  [●], 2015                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                     Robert J. Dehney (No. 3578)
                                     Andrew R. Remming (No. 5120)
                                     Matthew R. Koch (No. 6048)
                                     1201 N. Market St., 16th Flr.
                                     PO Box 1347
                                     Wilmington, DE  19899-1347
                                     Telephone:  302-658-9200
                                     Facsimile:  302-658-3989


                                     *Counsel for Debtors and Debtors in Possession*

8950286

**EXHIBIT 3**
[Sale Notice]

(Intentionally Omitted)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
:
In re                                                                    : Chapter 11
:
USA SYNTHETIC FUEL CORPORATION, *et al.*,[1]         : Case No. 15-10599 (MFW)
:
Debtors.                                                        : (Jointly Administered)
:
:      **Auction: TBD**
:      **Sale Objections Due: TBD**
:      **Sale Hearing: TBD**
---------------------------------------------------------------- x

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On March 17, 2015, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      On March 17, 2015, the Debtors filed a motion [D.I. [●]]  (the "Motion")[2] for entry of an order (the "Bidding Procedures Order"), among other things: (i) establishing bidding procedures (the "Bidding Procedures") relating to the sale of substantially all of the Debtors' assets (the "Bid Assets") pursuant to an asset purchase agreement (the "Asset Purchase Agreement") with Third Eye Capital Corporation (the "Stalking Horse Bidder"); (ii) authorizing the Debtors to enter into the Asset Purchase Agreement; (iii) approving certain bid protections for the Stalking Horse Bidder; (iv) establishing procedures relating to the assumption and assignment of certain executory contracts and unexpired leases to any purchaser of the Bid Assets, including notice of cure amounts; (v) approving the form and manner of notice of the Auction and the Sale Hearing; (vi) scheduling the Auction for the Bid Assets; (vii) scheduling a hearing to approve the Sale of the Bid Assets (the "Sale Hearing") and setting objection and bidding deadlines with respect to the Sale; and (viii) granting related relief.  **THE MOTION ADDITIONALLY REQUESTS ENTRY OF ORDERS: (I) AUTHORIZING THE SALE OF THE BID ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS TO THE SUCCESSFUL BIDDER; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) WAIVING THE REQUIREMENTS OF BANKRUPTCY RULES 6004(G) AND 6006(D); AND (IV) GRANTING RELATED RELIEF.**

3.      The Debtors are seeking to sell the Bid Assets to the Successful Bidder.  Approval of the Sale of the Bid Assets to the Successful Bidder may result in, among other things, the assumption, assignment, and/or transfer by the Debtors of certain executory contracts and unexpired leases.  If you are a party to an executory contract or unexpired lease with the Debtors, you may receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or unexpired lease.

4.      On [●], 2015, the Bankruptcy Court entered the Bidding Procedures Order [D.I. [●]].  Pursuant to the Bidding Procedures Order, if the Debtors receive one or more Qualified Bids for the Bid Assets (in addition to the Qualified Bid of the Stalking Horse Bidder), an Auction shall be held on **[●], 2015, at 10:00 a.m. (Prevailing Eastern Time)** at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, or at such other place, date, and time as may be designated in writing by the Debtors.  Only parties that have submitted a Qualified Bid for the Bid Assets in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by no later than **[●], 2015, at 5:00 p.m. (Prevailing Eastern Time)** (the "Bid Deadline") may participate as bidders at the Auction.

---

[1]      The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  USA Synthetic Fuel Corporation (5258); Lima Energy Company (5661); and Cleantech Corporation (6023). The Debtors' address is 312 Walnut Street, Suite 1600, Cincinnati, Ohio 45202.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

5.      Any party that wishes to take part in this process and submit a bid for the Bid Assets must submit its competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

6.      Notwithstanding anything to the contrary in the Asset Purchase Agreement, without obtaining the consent of any Party thereto, the Stalking Horse Bidder may assign all or part of its rights under the Asset Purchase Agreement to, and all or part of its obligations under the Asset Purchase Agreement may be assumed by, any of its Affiliates or its lenders as collateral security, or to a third party, provided that if such assignment and/or assumption takes place, the Stalking Horse Purchaser shall continue to be liable jointly and severally with such assignee for all of its obligations thereunder.

7.      At the Sale Hearing, the Debtors will seek the entry of an order which provides, among other things, as follows:

Except to the extent expressly included in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtors, employees, former employees, all debt security holders, administrative agencies, governmental tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers and other parties in possession of any of the Acquired Assets at any time, trade creditors and all other creditors, holding Liens of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the Assumed Contracts, the operation of the Debtors' business before the Closing Date, the Transactions, or the transfer of the Acquired Assets and the Assumed Contracts to the Purchaser or its designee, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Purchaser, or any affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Acquired Assets.  Notwithstanding anything to the contrary herein, the Debtors shall not be barred, estopped or enjoined from asserting, prosecuting, commencing, continuing or otherwise pursuing in any manner any and all rights, claims, actions and the like with respect to (a) any DIP Lender's obligation to make any DIP Loan subject to the terms and conditions of the DIP Orders and of the DIP Term Sheet, (b) the DIP Agent's or any DIP Lender's obligations to comply in all respects with the terms and conditions of the DIP Orders and the DIP Term Sheet that are required to be performed by such party (subject to any applicable limitations on such compliance set forth herein or therein) or (c) compliance in all respects by the Purchaser with the Agreement and this Order.[3]  Following the Closing Date, no holder of a Lien in the Debtors shall interfere with the Purchaser's or its designee's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtors may take in the Debtors' cases.

The Purchaser has not assumed and is not otherwise obligated for any of the Debtors' liabilities other than the Assumed Liabilities and the Purchaser has not acquired any of the Excluded Assets (as defined in the Agreement). Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any Lien on the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or cause of action against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets.

---

[3]      Unless defined elsewhere herein, capitalized terms used in this sentence shall have the meanings ascribed to them in the *Final Order (I) Authorizing Debtors To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363, And 364, (II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To 11 U.S.C. §§ 364 And 507, (III) Authorizing Use Of Cash Collateral Pursuant To 11 U.S.C. § 363, And (IV) Providing Adequate Protection To Prepetition Secured Lenders Pursuant To 11 U.S.C. §§ 361, 362, 363, 364, And 507* [Docket No. ____].

8.    7.The Sale Hearing to consider approval of the sale of the Bid Assets **FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS** will be held before the Honorable [●], United States Bankruptcy Judge, 824 N. Market Street, [●] Floor, Wilmington, Delaware 19801, Courtroom #[●] on [●], 2015, at [●] **a.m./p.m. (Prevailing Eastern Time)**.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in the agenda for the Sale Hearing or in open court on the date scheduled for the Sale Hearing.

9.    8.Objections, if any, to the sale of the Bid Assets, or the sale relief requested in the Motion (other than with respect to cure amounts and adequate assurance which are subject to a separate notice) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court, Third Floor, 824 N. Market Street, Wilmington, Delaware 19801, on or before **4:00 p.m. (Prevailing Eastern Time) on [●], 2015,** and (d) be served, so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on the same day, upon:

(a) the Debtors, 312 Walnut Street, Suite 1600, Cincinnati, OH 45202; (b) counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney, Esq.; (c) counsel to the Stalking Horse Bidder, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10019, Attn: Jay M. Goffman, Esq.; (d) Asgaard Capital LLC, 1934 Old Gallows Road, Suite 350, Vienna, VA 22182, Attn: Charles C. Reardon; (e) counsel to any statutory committee appointed in the Debtors' cases and (e) Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801, Attn: David L. Buchbinder, Esq.

10.    9.**All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.  UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

11.    10.This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Bidding Procedures Order, the Bidding Procedures, the Sale Order, and the Asset Purchase Agreement, which shall control in the event of any conflict.  The Debtors encourage parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the Sale of the Bid Assets or to obtain a copy of any related document, subject to any necessary confidentiality agreement, may make a written request to proposed investment bankers to the Debtors: Charles C. Reardon, Senior Managing Director, Asgaard Capital LLC, 1934 Old Gallows Road, Suite 350, Vienna, VA 22182, 703-752-6252, creardon@asgaardcapital.com.  In addition, copies of the Motion, Bidding Procedures Order, the Bidding Procedures, the Sale Order, the Asset Purchase Agreement, and this Notice can be found on (a) the Bankruptcy Court's website, www.deb.uscourts.gov; and (b) and with the Clerk of the Bankruptcy Court, Third Floor, 824 N. Market Street, Wilmington, Delaware 19801.

Dated:    [●], 2015                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                        Robert J. Dehney (No. 3578)
                                        Andrew R. Remming (No. 5120)
                                        Matthew R. Koch (No. 6048)
                                        1201 N. Market St., 16th Flr.
                                        PO Box 1347
                                        Wilmington, DE  19899-1347
                                        Telephone:  302-658-9200
                                        Facsimile:  302-658-3989

                                        *Counsel for Debtors and Debtors in Possession*

8950287