## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

In re                                  :   Chapter 11

USA SYNTHETIC FUEL CORPORATION, *et al.,*[1]   :   Case No. 15-10599 (MFW)

Debtors.              :   (Joint Administration)

                                      :   **RE: D.I. 7, 25**

------------------------------------------------------------- x

## FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 364 AND 507, (III) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (IV) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364, AND 507

Upon the motion (the "Motion")[2], dated March 17, 2015, of USA Synthetic Fuel Corporation (the "Borrower") and certain of its affiliates, each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned cases (the "Cases"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things, entry of an interim order (the "Interim Order") and a final order (this "Final Order"):

---

[1]    The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  USA Synthetic Fuel Corporation (5258); Lima Energy Company (5661); and Cleantech Corporation (6023).  The Debtors' address is 312 Walnut Street, Suite 1600, Cincinnati, Ohio 45202.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the DIP Term Sheet (defined below).

(a)     authorizing the Borrower to obtain postpetition financing (the "DIP Financing"), and for the Guarantors (as defined below) to guaranty certain of the Borrower's obligations in connection with the DIP Financing, consisting of a first-lien superpriority term loan multi-draw facility in an aggregate principal amount of up to $765,970 (the "DIP Facility"), with Third Eye Capital Corporation, an Ontario corporation ("TECC"), as administrative agent and collateral agent on behalf of certain lenders (the "DIP Lenders") and other holders of any DIP Obligations (as defined below) (in such capacities, the "DIP Agent" and collectively with the DIP Lenders and any other holder of DIP Obligations, the "Secured Parties").

(b)     authorizing the Debtors to execute and deliver, and incur all liabilities and obligations under

   (i)     (i)     that certain Terms of Debtor-in-Possession Financing, dated as of March 17, 2015, as amended, modified, restated, or supplemented in accordance with the terms thereof or hereof, (the "DIP Term Sheet," the collateral documents (including but not limited to one or more control agreements, pledge agreements, mortgages and security agreements to the extent applicable), the Guaranty (as defined in the DIP Term Sheet), the Budget (as defined below), all such instruments, financing statements and documents as may be executed and delivered in connection with or relating to the DIP Facility, together with the Interim Order and this Final Order and any certificate or other document made or delivered pursuant hereto or thereto, the "DIP Documents"), and perform all such other and further acts as may be required in connection with the respective DIP Documents; and

   (ii)     all other agreements, documents, notes, or instruments as may be required, necessary, or desirable (including all collateral documents) and which are executed or delivered in connection with the DIP Term Sheet, including the budget attached hereto as Exhibit 1 (as may be modified in accordance with the DIP Term Sheet, the "Budget");

(c)    authorizing the Debtors to (i) use proceeds of the DIP Facility solely as expressly permitted in the DIP Documents, including the use solely to fund the Debtors' operations and conduct and pursue a sale and liquidation process;

(d)    granting automatically perfected security interests in and liens on all of the DIP Collateral (as defined below) to the DIP Agent, for the benefit of the Secured Parties, and granting superpriority administrative expense status to the DIP Obligations (as defined below), in each case on the terms and subject to the relative priorities set forth in the DIP Documents;

(e)    granting adequate protection to any secured parties whose existing liens on or security interests in the DIP Collateral (as defined below) are being primed by the DIP Liens (as defined below) or whose collateral is being used (including Cash Collateral) by the Debtors pursuant to the DIP Term Sheet and this Final Order to the extent of any diminution in value of their interests in the DIP Collateral (as defined below) and subject in all respects to the Carve Out (as defined herein);

(f)    authorizing the Borrower and the Guarantors under the DIP Documents to use, subject to the DIP Documents, any Cash Collateral (as defined below) in which the secured parties under the Existing Agreements (as defined below) may have an interest, and the granting of adequate protection to parties holding valid, unavoidable, and perfected liens on such Cash Collateral with respect to, inter alia, such use of their Cash Collateral to the extent of any diminution in value of their interests in such Cash Collateral;

(g)    authorizing the Borrower to pay the principal, interest, fees, expenses, disbursements, and other amounts payable under the DIP Documents as such amounts become due and payable;

(h)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the other DIP Documents; and

(i)     granting the Debtors such other and further relief as is just and proper;

and this court (the "Court") having considered the Motion, the exhibits attached thereto, the *Declaration of Dr. Steven C. Vick in Support of First Day Relief* (the "Vick Declaration") [Docket No. 2]; and a hearing to consider entry of the Interim Order having been held before the Court on March 19, 2015 (the "Interim Hearing"); and the Court having entered the Interim Order following the Interim Hearing [Docket No. 25]; and upon all of the pleadings filed with the Court, all evidence presented in support of this Final Order, the arguments of counsel stated on the record of the hearing to consider entry of this Final Order held before the Court on April 15, 2015 (the "Final Hearing"), and all of the proceedings held before the Court; and due and sufficient notice of the Motion and the relief requested therein having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED, that:**[3]

1.     **Motion Granted.**  The Motion is GRANTED on a final basis on the terms and conditions set forth herein.

2.     **Commencement of the Cases.**  On March 17, 2015 (the "Petition Date"), the Debtors commenced the Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties

---

[3]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Cases.

3. **Jurisdiction and Venue.** This Court has jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. **Interim Order**. On March 19, 2015, the Court entered the Interim Order (I) Authorizing Debtors To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363, And 364, (II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To 11 U.S.C. §§ 364 And 507, (III) Authorizing Use Of Cash Collateral Pursuant To 11 U.S.C. § 363, (IV) Providing Adequate Protection To Prepetition Secured Lenders Pursuant To 11 U.S.C. §§ 361, 362, 363, 364, And 507, And (V) Scheduling Final Hearing Pursuant To Bankruptcy Rules 4001(b) and (c) And Local Bankruptcy Rule 4001-2 [Docket No. 25].

5. **Notice.** Notice of the relief sought by the Motion and the Final Hearing was served on the following parties: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the Office of the United States Attorney for the District of Delaware; (v) those entities or individuals listed on the Debtors' consolidated list of 20 largest unsecured creditors; (vi) the cash management bank with whom the Debtors maintain their bank account; (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002; (viii) counsel to the DIP Agent; (ix) counsel to TECC and the TEC Prepetition Lenders (defined below); and (x) all other known  parties (after reasonable inquiry) asserting a lien against the Debtors' assets. Notice of the Motion, the relief sought by the

Motion, the Final Hearing and this Final Order has been provided in accordance with the Bankruptcy Rules and Local Rules and shall be deemed good and sufficient notice thereof. No other notice need be provided for entry of this Final Order.

6.    **Debtors' Stipulations.**  Subject to paragraph 23 of this Final Order, the Debtors admit, stipulate, and agree that:

(a)    Prior to the Petition Date, the Debtors, other than Cleantech Corporation ("Cleantech Corp"), entered into (i) that certain Note Purchase Agreement (the "Note Purchase Agreement"), dated as of September 24, 2012, among Lima Energy Company ("LEC"), as borrower, USA Synthetic Fuel Corporation ("USFC"), as guarantor, TECC (as defined below), as administrative agent (in such capacity, "NPA Agent"), Sprott PC Trust, as noteholder, and Third Eye Capital Credit Opportunities Fund – Insight Fund as noteholder (together with Sprott PC Trust, the "Prepetition Noteholders"); and (ii) that certain Unit Purchase Agreement (the "Unit Purchase Agreement"), dated as of September 24, 2012, among LEC, as borrower, USFC, as guarantor, TECC, as administrative agent (in such capacity, "UPA Agent"), and Strative Capital Ltd. (the "Prepetition Investor", and together with the Prepetition Noteholders, the NPA Agent, the UPA Agent and the Royalty Agent (defined below), collectively, the "TEC Prepetition Lenders"), and (iii) that certain Royalty Agreement (the "Royalty Agreement"; and together with the Note Purchase Agreement and the Unit Purchase Agreement, collectively, the "TEC Prepetition Agreements"), among LEC, as payor, TECC, as administrative agent (in such capacity, "Royalty Agent"), and the Prepetition Investor, as royalty investor.

(b)    The TEC Prepetition Agreements are valid and binding agreements and are obligations of the Debtors who are parties thereto.  The Debtors' indebtedness under the TEC Prepetition Agreements as of the Petition Date (the "TEC Prepetition Indebtedness") includes any and all principal amounts owing or outstanding under the TEC Prepetition Agreements,

interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable fees and expenses of attorneys, accountants, and financial advisors to the extent chargeable or reimbursable pursuant to the TEC Prepetition Agreements or related agreements).

(c)     Pursuant to the TEC Prepetition Agreements, the Debtors were, as of the Petition Date, indebted to (i) the Prepetition Noteholders under the Note Purchase Agreement in the aggregate principal amount of approximately $31,604,863 plus accrued interest, redemption fees and other similar costs and (ii) the Prepetition Investor under the Unit Purchase Agreement in the aggregate principal amount of approximately $5,000,000 plus accrued interest, redemption fees and other similar costs. The TEC Prepetition Indebtedness, including the amounts specified in this subparagraph 6(c), constitutes the legal, valid, and binding obligations of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature to the TEC Prepetition Indebtedness. None of the Debtors, either collectively or individually, have or shall assert any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the TEC Prepetition Indebtedness. The TEC Prepetition Indebtedness and any amounts previously paid to any lender pursuant to the terms of the TEC Prepetition Agreements on account thereof or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in this Final Order, or the other DIP Documents.

(d)     To secure the TEC Prepetition Indebtedness under the TEC Prepetition Agreements, the Debtors entered into the following prepetition collateral documents (the "TEC

<u>Collateral Documents</u>", and together with the TEC Prepetition Agreements, the "<u>TEC Prepetition Debt Documents</u>"):

(i)    that certain First Lien Security Agreement (the "<u>First Lien Security Agreement</u>"), dated September 24, 2012, by and among USFC, LEC, Cleantech Energy Company ("<u>Cleantech Energy</u>"), Cleantech Corp and TECC, as administrative agent under the Note Purchase Agreement;

(ii)   that certain First Lien Parent Guaranty, dated as of September 24, 2012, by and between USFC and TECC, as administrative agent under the Note Purchase Agreement;

(iii)  that certain First Lien Subsidiary Guaranty, dated as of September 24, 2012, by and between Cleantech Energy, Cleantech Corp and TECC, as administrative agent under the Note Purchase Agreement;

(iv)   that certain First Lien Amended and Restated Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement (the "<u>First Lien Mortgage</u>"), dated as of September 24, 2012, by LEC in favor of TECC, as administrative agent under the Note Purchase Agreement;

(v)    that certain Second Lien Security Agreement (the "<u>Second Lien Security Agreement</u>", and together with the First Lien Security Agreement, the "<u>TEC Security Agreements</u>"), dated September 24, 2012, by and among USFC, LEC, Cleantech Energy, Cleantech Corp and TECC, as administrative agent under the Unit Purchase Agreement;

(vi)   that certain Second Lien Parent Guaranty, dated as of September 24, 2012, by and between USFC and TECC, as administrative agent under the Unit Purchase Agreement;

(vii)  that certain Second Lien Subsidiary Guaranty, dated as of September 24, 2012, by and between Cleantech Energy, Cleantech Corp and TECC, as administrative agent under the Unit Purchase Agreement;

(viii) that certain Second Lien Amended and Restated Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement (the "<u>Second Lien Mortgage</u>"), dated as of September 24, 2012, by LEC in favor of TECC, as administrative agent under the Unit Purchase Agreement; and

(ix)   that certain Third Lien Amended and Restated Mortgage, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement (the "<u>Third Lien Mortgage</u>"), dated as of September 24, 2012, by LEC in favor of TECC, as administrative agent under the Royalty Agreement.

(e)     Pursuant to the TEC Collateral Documents, the Debtors party thereto granted security interests in, and continuing liens on (collectively, the "TEC Prepetition Liens"), certain assets of such Debtors (with respect to the assets of a Debtor, the "TEC Prepetition Collateral") to and/or for the TEC Prepetition Lenders under the TEC Collateral Documents. The TEC Prepetition Collateral includes collateral in or upon which a lien or other security interest has been granted in favor or for the benefit of the TEC Prepetition Lenders in connection with, pursuant to, or under the TEC Prepetition Debt Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits, as set forth on Annex A hereto.

(f)     The TEC Collateral Documents are valid and binding agreements and obligations of the Debtors, and the TEC Prepetition Liens constitute valid, binding, enforceable, and perfected security interests and "Liens", as that term is defined Bankruptcy Code Section 101(37) ("Liens"), which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in this Final Order or the other DIP Documents.

(g)     To the extent provided in the TEC Collateral Documents or related agreements, the TEC Prepetition Lenders have taken all reasonable steps to properly perfect their security interests and Liens in and on the TEC Prepetition Collateral by the filing of UCC-1 financing statements, mortgages, and other required documents against the Debtors and such TEC Prepetition Collateral with the proper state and county offices for the perfection of such security interests and Liens.

(h)     Without the requirement or need to file any proof of claim with respect thereto, (i) the TEC Prepetition Indebtedness under the TEC Prepetition Debt Documents shall constitute allowed, secured prepetition claims for all purposes in the Cases and any subsequent

proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceeding if any of the Cases are converted to a case under chapter 7 of the Bankruptcy Code or in any proceedings related to any of the foregoing (a "Successor Case"), (ii) the TEC Prepetition Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except as provided in this Final Order or the other DIP Documents) or avoidance for all purposes in these Cases and any Successor Case, and (iii) the TEC Prepetition Indebtedness, the TEC Prepetition Liens, and prior payments on account of or with respect to the TEC Prepetition Indebtedness shall not be subject to any other or further claim, cause of action, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor.

7.    **Findings Regarding the DIP Financing.**

(a)    An immediate and critical need exists for the Borrower to obtain postpetition financing and use cash collateral to continue the operation of its businesses. However, the use of cash, that is property of the Debtors and that constitutes "cash collateral" as defined by section 363(a) of the Bankruptcy Code, including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of any collateral pledged pursuant to the Liens and security interests granted to the secured creditors of the Debtors holding valid, perfected, enforceable, continuing and non-avoidable prepetition security interests and Liens upon the DIP Collateral (including Cash Collateral) (such parties, the "Prepetition Secured Parties"; such Liens, the "Prepetition Liens" and the collateral pledged pursuant to such Prepetition Liens, together with the TEC Prepetition Collateral, the "Prepetition Collateral") that is property of the Debtors ("Cash Collateral") alone would be insufficient to meet the Borrower's immediate postpetition liquidity needs.

(b)    As discussed in the First Day Declaration, the Borrower is unable to obtain the required funds (i) in the forms of (1) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (2) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (3) unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code, or (4) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code, or (ii) on terms more favorable than those embodied in the DIP Term Sheet and the other DIP Documents. The DIP Agent and the DIP Lenders are prepared to enter into the DIP Financing solely on the terms set forth in the DIP Term Sheet, this Final Order and the other DIP Documents.

(c)    The terms of the DIP Financing are fair, just, and reasonable under the circumstances, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of the DIP Financing have been negotiated in good faith and at arm's length by and among the Borrower, the Guarantors (as defined below), the DIP Agent and the DIP Lenders. Any credit extended or other indebtedness or liabilities arising under, in respect of, or in connection with the DIP Financing, the DIP Term Sheet, the Interim Order, this Final Order, or any other DIP Document, shall be deemed to have been extended in "good faith" by the DIP Agent and the DIP Lenders as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections afforded by section 364(e) of the Bankruptcy Code, and the DIP Agent's claims on behalf of itself and the other Secured Parties, the DIP Superpriority Claims (as defined below), the DIP Liens (as defined below), and other protections granted pursuant to this Final Order, the Interim Order and the other DIP Documents, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any portion hereof is vacated, reversed, amended, or modified, on appeal or otherwise.

11

(d)     The relief requested in the Motion is necessary, essential, and appropriate for the management and preservation of the Debtors' assets and properties, and is in the best interests of the Debtors, their estates, and their creditors.

8.     **Authorization of the DIP Financing.**

(a)     The Borrower and the other Debtors are hereby authorized to execute and enter into, deliver, and perform all obligations under the DIP Documents, including, without limitation, the DIP Term Sheet attached hereto as <u>Exhibit 2</u>.  This Final Order and the other DIP Documents shall govern the respective financial and credit accommodations to be provided to the Borrower by the DIP Agent and the DIP Lenders in connection with the DIP Financing.

(b)     The Borrower is hereby immediately authorized to borrow money pursuant to the DIP Documents up to the full amount of the DIP Facility; which shall be used solely as expressly provided in this Final Order and the other applicable DIP Documents, including the Budget. The "Guarantors" (as defined in the DIP Term Sheet, and collectively, the "<u>Guarantors</u>") are hereby authorized to unconditionally guaranty (on a joint and several basis) the foregoing borrowings and extensions of credit, and the Borrower's and each other Guarantor's other obligations and liabilities under the DIP Documents, including, without limitation, costs, fees, and other expenses and amounts provided for in the DIP Documents, in accordance with the terms of the DIP Documents.   The Debtors are authorized to pay and perform all "DIP Obligations" as that term is defined below.

(c)     So long as no Termination Event (as defined below) has occurred, the Debtors shall be authorized to use the proceeds of the DIP Loans in accordance with the Budget and the other applicable DIP Documents in an amount that would not cause the Debtors to use Cash Collateral or proceeds of the DIP Loans in excess of the Permitted Variance (as defined in the DIP Term Sheet).  If the aggregate amount of any proceeds of the DIP Loans or any Cash

Collateral actually used by the Debtors, measured once every week (unless otherwise provided in the DIP Term Sheet), is less than the aggregate amount of proceeds of the DIP Facility and Cash Collateral available for use by the Debtors in the Budget during such period, then the Debtors may carry over any such unused amount to the future periods in the Budget.

(d)     In furtherance of the foregoing and without further approval of this Court, the Borrower and the other Debtors are hereby authorized to perform all acts, to make, execute and deliver all instruments and documents, and to pay all related fees, that may be required or necessary for the Debtors' performance of their obligations under the DIP Financing, including, without limitation:

(i)     the execution, delivery, and performance of the respective DIP Documents, and any guarantees, security and pledge agreements, financing statements, and mortgages contemplated by the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents, or other modifications to and under the respective DIP Documents, in each case in such form as the Debtors, and the DIP Agent may agree;

(iii)   the non-refundable payment of principal and interest under, and any fees referred to in, the respective DIP Documents, and such costs and expenses as may be due in accordance with the respective DIP Documents; and

(iv)    the performance of all other acts required under, or in connection with, the DIP Documents.

(e)     All of the DIP Liens and the Adequate Protection Liens (each as defined below) shall be effective and perfected as of the date of entry of the Interim Order without the necessity of the execution, recording, or filing of mortgages, security agreements, pledge agreements, financing statements, or other agreements or instruments.

(f)     The DIP Term Sheet and the DIP Obligations (as defined below) constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each of them, and each of their successors and assigns, and each person or entity party to the DIP

Documents in accordance with the respective terms of the Interim Order, this Final Order, and the other DIP Documents, and shall survive the dismissal of any of the Cases or the conversion of any of the Cases to a Successor Case.

(g)    No obligation, payment, transfer, or grant of security under the Interim Order, this Final Order, or the other DIP Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity, except as provided in this Final Order or the other DIP Documents.

(h)    For purposes of this Final Order, the term "DIP Obligations" shall mean all loans made to the Debtors pursuant to the DIP Term Sheet (the "DIP Loans"), all other "DIP Obligations" (as defined in the DIP Term Sheet), all interest thereon and all fees, costs, expenses, indemnification obligations, and other liabilities, owing by the Debtors to the DIP Agent, any DIP Lender or any of their respective Related Persons (as defined in the DIP Term Sheet) in accordance with and relating to the Interim Order, this Final Order, or the other DIP Documents relating to the DIP Facility.

(i)    The DIP Loans shall (i) be evidenced by the books and records of the DIP Agent and, upon the request of any DIP Lender (or the DIP Agent on behalf of any DIP Lender), a note executed and delivered to such DIP Lender by the Borrower in accordance with the terms of the DIP Documents, which note shall evidence such DIP Lender's DIP Loans in addition to such accounts and records, (ii) bear interest and incur fees at the rates set forth in the DIP Term Sheet, (iii) be secured in the manner specified below and under the applicable DIP Documents,

(iv) be payable in accordance with the applicable DIP Documents, and (v) otherwise be governed by the terms set forth in this Final Order and the other DIP Documents.

(j)      Except as otherwise provided in paragraph 30 hereof, the automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application, or order of the Court to the extent necessary to permit the DIP Agent and the other Secured Parties[4], subject in all respects to the DIP Documents, to perform any act authorized or permitted under or by virtue of this Final Order or any of the other DIP Documents, including, without limitation, (i) to implement the DIP Financing authorized by this Final Order and pursuant to the terms of the DIP Documents, (ii) to take any act to create, validate, evidence, attach, or perfect any Lien, security interest, right, or claim in the DIP Collateral, and (iii) to assess, charge, collect, advance, deduct, and receive payments with respect to the respective DIP Obligations, including, without limitation, all principal, interest, fees, costs, and expenses permitted under the DIP Documents, and apply such payments to the respective DIP Obligations pursuant to this Final Order and the other DIP Documents.

9.      **Conditions Precedent.**  Neither the DIP Agent nor any DIP Lender shall have any obligation to make any DIP Loans or any other financial accommodation under the respective DIP Documents unless the conditions precedent to make such extensions of credit under the respective DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

---

[4]   Secured Parties, as defined above, means the DIP Agent, the DIP Lenders and their respective Related Persons (as defined in the DIP Term Sheet) that are owed expenses and indemnification obligations in connection with the DIP Facility pursuant to the DIP Term Sheet.

10.    **Use of DIP Facility Proceeds.**  The Debtors shall use the proceeds of the DIP Facility solely to fund the Debtors' operations, conduct and pursue a sale and liquidation process, all in accordance with the Budget.

11.    **DIP Superpriority Claims.**    Subject in all respects to paragraph 12 below: pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Obligations constitute (without the need to file a proof of claim) joint and several superpriority claims (the "DIP Superpriority Claims") against each Debtor, with priority over any and all administrative expenses of the Debtors, whether now existing or hereafter arising or incurred, of any kind whatsoever, including any and all administrative expenses or other claims of the kind specified in or arising under sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, 1114, or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment, whether now in existence or hereafter incurred by the Debtors, and shall at all times be senior to the rights of any Debtor, any Debtor's estate, and any successor trustee, estate representative, or any creditor, in any of the Cases or any Successor Case.  The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition assets of the Debtors, including, but not limited to, the DIP Collateral and the Prepetition Collateral.  Notwithstanding any contrary provision in the Interim Order, this Final Order, the DIP Term Sheet or any DIP Documents, the DIP Superpriority Claims shall be subject to payment of the Carve Out.

12.    **DIP Liens.**

(a)    As security for the full and timely payment of the DIP Obligations, effective upon the entry of the Interim Order, the DIP Agent, for the benefit of the Secured Parties, was by the Interim Order and hereby is granted, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable, and fully

perfected security interests in and liens and mortgages (collectively, the "DIP Liens") upon all DIP Collateral (as defined below), which shall (i) constitute first-priority security interests in and Liens upon all DIP Collateral (as defined below) that is not otherwise subject to any valid, enforceable, and non-avoidable Liens in existence on the Petition Date that are not subject to subordination and were either properly perfected as of the Petition Date or subsequently perfected pursuant to section 546(b) of the Bankruptcy Code and are senior to the TEC Prepetition Liens (collectively, the "Permitted Prepetition Liens"), (ii) be senior to and prime the TEC Prepetition Liens on the TEC Prepetition Collateral, (iii) be senior to and prime all Adequate Protection Liens, and (iv) be subordinate to the Carve Out (as defined below) and the Permitted Prepetition Liens; provided, that the Debtors expressly reserve their rights and the estates' rights to challenge, avoid or otherwise object to any Prepetition Liens (other than the TEC Prepetition Liens).

       (b)     As used herein, "DIP Collateral" shall mean all assets and property of each Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all permits, contracts, general intangibles, instruments, equipment, accounts, and documents, all goods, inventory and fixtures, all documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, tradenames and other intellectual property, all equity interests, all books and records relating to the foregoing, all other personal and real property of the Debtors, and all other collateral pledged under the DIP Documents and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform

Commercial Code as in effect from time to time in the State of Delaware (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)). For the avoidance of doubt, the DIP Collateral shall not include Avoidance Actions (as defined below), but shall, upon entry of this Final Order, include the proceeds of Avoidance Actions. "Avoidance Actions" shall mean actions for preferences, fraudulent conveyances, and other avoidance power claims under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code.

13.    **Priority of Liens.**

(a)    The DIP Liens and the DIP Superpriority Claims are and shall be at all times senior and prior in all respects to the Adequate Protection Liens, the TEC Prepetition Liens and any other prepetition liens that are not Permitted Prepetition Liens on the DIP Collateral.

(b)    The DIP Liens shall constitute valid, enforceable, non-avoidable, and duly perfected first-priority security interests in and Liens upon the DIP Collateral, junior and subject only to any Permitted Prepetition Liens and the Carve Out.

(c)    The DIP Liens shall not be (i) subject to any Lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other Lien under section 364(d) of the Bankruptcy Code or otherwise, including by any order heretofore or hereafter entered in the Cases or any Successor Case. Except as expressly permitted in the respective DIP Documents and absent full payment and satisfaction of all obligations of the Debtors under the DIP Facility, the Borrower and the other Debtors shall not (i) grant or impose any Liens on the DIP Collateral or (ii) except as permitted in the respective DIP Documents, prime or seek to prime the DIP Liens and shall not offer any other parties any Lien on the DIP Collateral. In addition, the Borrower and the other Debtors shall not incur, create, assume, become, or be liable in any manner with respect to,

or permit to exist, any secured indebtedness, except as expressly permitted under the DIP Documents and the Budget.

14. **Validity of Liens**.

(a)    In no event shall (i) any Lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (ii) any person or entity who pays (or through the extension of credit to the Debtors, causes to be paid) any of the respective DIP Obligations, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, Liens or security interests granted in favor of, or conferred upon the DIP Agent or any other Secured Parties, by the terms of the Interim Order, this Final Order, or any of the respective DIP Documents, until all of the DIP Obligations are paid in full in cash in accordance with the Interim Order, this Final Order, or any of the respective DIP Documents.

(b)    The DIP Liens and the DIP Superpriority Claims shall continue in any Successor Case for the Debtors under any chapter of the Bankruptcy Code, and all Liens, security interests, and claims shall maintain their priority as provided in this Final Order.  If an order dismissing any of the Cases, pursuant to section 1112 of the Bankruptcy Code or otherwise, is at any time entered, such order shall provide that the DIP Liens and the DIP Superpriority Claims shall continue in full force and effect, shall remain binding on all parties in interest in the Case, and shall maintain their priorities as provided in this Final Order, until all DIP Obligations under the DIP Documents have been paid and satisfied in full and in cash.

15. **Carve Out.**  Notwithstanding anything in the Interim Order, this Final Order, the DIP Term Sheet, the TEC Prepetition Debt Documents, the Existing Agreements, the DIP Documents, or any other order of this Court to the contrary (but subject to paragraph 17 of this Final Order), the TEC Prepetition Liens and all claims and Liens granted under the Interim Order, this Final Order, the DIP Term Sheet, the TEC Prepetition Debt Documents, the Existing

Agreements and the DIP Documents to or for the benefit of the TEC Prepetition Lenders, the Prepetition Secured Parties, the DIP Agent, the DIP Lenders, Adequate Protection Parties (as defined below) and the other Secured Parties, including, but not limited to, the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims (as defined below), shall be subject to payment of the Carve Out.  As used in this Final Order, the term "Carve Out" means, collectively: (i) all unpaid fees required to be paid (a) to the Clerk of the Bankruptcy Court and (b) to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code in such amounts as determined in agreement with the United States Trustee or by final order of the Court, (ii) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code not to exceed $25,000, (iii) after the occurrence and during the continuance of a Trigger Event (as defined below), all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtors in an aggregate amount not exceeding $25,000 for the payment of the Debtors' professionals, which amount may be used subject to the terms of the DIP Term Sheet and this Final Order, and (iv) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtors at any time when no Trigger Event is continuing, that remain unpaid subsequent to a Trigger Event, in an aggregate amount not exceeding such unpaid professional fees and disbursements reflected on the Budget, to be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements), in each of the foregoing clauses (i), (ii), (iii) and (iv), to the extent allowed by the Court at any time; provided, however, that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (iii) and (iv) above.  For purposes of the foregoing, the

term "Trigger Event" shall mean the delivery of a written notice (which may be delivered by email) by the DIP Agent to the Debtors through their counsel that an Event of Default has occurred.

16.  **Use of Cash Collateral.**

(a)  Subject to the terms and conditions set forth in this Final Order, including paragraph 17 hereof, and the Budget, and effective immediately as of entry of the Interim Order, the Debtors were and are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use Cash Collateral (i) in the ordinary course of the Debtors' businesses, (ii) to pay reasonable professional fees, expenses, and disbursements related to services provided in connection with the Cases, including, without limitation, to the retained professionals under Bankruptcy Code sections 327, 328, and 330 and pursuant to paragraph 22 below, and (iii) to pay all fees required to be paid to the Clerk of this Court and to the U.S. Trustee under 28 U.S.C. § 1930(a), provided, however, that the Debtors' authorization to use Cash Collateral shall immediately terminate upon the occurrence of a Termination Event (as defined below).

17.  **Restriction on Use of Funds.**  Notwithstanding anything in this Final Order, any other DIP Documents, or any other order by this Court to the contrary, no proceeds of the DIP Financing, Cash Collateral, Prepetition Collateral, or DIP Collateral, and no portion of the Carve Out, may be used in the Cases or any other proceeding of any kind, or in any jurisdiction, directly or indirectly by any Debtor, or any other person or entity, to (i) object to, contest, or raise any defense to, or assert any Challenge (as defined below) to, the validity, perfection, priority, extent, or enforceability of any amounts due under, the DIP Financing, the DIP Documents, the DIP Collateral, the TEC Prepetition Indebtedness, the TEC Prepetition Debt Documents, or the TEC Prepetition Collateral, or the liens or claims granted under the TEC Prepetition Debt Documents, the Interim Order, this Final Order, or any other DIP Documents,

including the DIP Liens and the DIP Superpriority Claims, (ii) investigate, assert, or prosecute any claims, defenses, or causes of action (including, without limitation, any claims or causes of action under chapter 5 of the Bankruptcy Code) or any Challenge against the DIP Agent, the DIP Lenders, the TEC Prepetition Lenders, or their respective Related Persons, except as set forth in paragraphs 23 and 30(b), (iii) prevent, hinder or otherwise delay the DIP Agent's, the DIP Lenders' or the TEC Prepetition Lenders' assertion, enforcement, or realization against or upon Cash Collateral or the DIP Collateral, in accordance with this Final Order, the other DIP Documents, and the TEC Prepetition Debt Documents, except as set forth in paragraphs 23 and 30(b), (iv) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders or the TEC Prepetition Lenders hereunder or under the DIP Documents or the TEC Prepetition Debt Documents, or (v) take any other action prohibited by the DIP Term Sheet.

18. **Termination of DIP Financing and Cash Collateral.**   The Debtors' authorization to use the DIP Financing and Cash Collateral shall immediately terminate upon the occurrence of a "Termination Event", which shall mean the earliest to occur of (a) the expiration of three (3) business days (the "Default Notice Period") following the provision of written notice to the Debtors (with a copy of such notice provided to counsel for the Debtors and the U.S. Trustee) upon the occurrence of an Event of Default, (b) the occurrence of a Maturity Date as that term is defined in the DIP Term Sheet, and (c) the date on which this Final Order is no longer in full force and effect.

19. **Adequate Protection.**

(a)    As adequate protection for the interests of the secured creditors of the Debtors with valid, perfected, enforceable, continuing and non-avoidable prepetition Liens on property of the Debtors (the "Prepetition Secured Parties") holding valid, perfected, enforceable, continuing and non-avoidable prepetition security interests and Liens upon the DIP Collateral

(including Cash Collateral), whether under (1) the First Lien Security Agreement and the First Lien Mortgage (collectively, the "First Lien Adequate Protection Parties"), (2) the Second Lien Security Agreement and the Second Lien Mortgage (collectively, the "Second Lien Adequate Protection Parties"), (3) the Third Lien Mortgage (the "Third Lien Adequate Protection Parties") or (4) otherwise ("Other Adequate Protection Parties"; and together with the First Lien Adequate Protection Parties, the Second Lien Adequate Protection Parties and the Third Lien Adequate Protection Parties, the "Adequate Protection Parties"), in an aggregate amount equal to any diminution in value of a Prepetition Secured Party's interests from and after the Petition Date (the "Diminution of Value"), whether or not resulting from the depreciation, physical deterioration, loss or decline in market value, use, sale or lease by the Debtors of the DIP Collateral (including Cash Collateral), the granting of the DIP Liens, the subordination of their Prepetition Liens thereto and to the Carve Out, the imposition or enforcement of the automatic stay of section 362(a), or otherwise, the Adequate Protection Parties have consented to and shall receive adequate protection on the following terms and conditions:

    (i)    **Adequate Protection Liens.**  Solely to the extent of any such Diminution of Value, (A) the First Lien Adequate Protection Parties shall have pursuant to sections 361, 362(d), 363(c), 363(e), and 364(d) of the Bankruptcy Code, replacement security interests in and Liens upon all of the DIP Collateral (the "First Lien Adequate Protection Liens"), which First Lien Adequate Protection Liens shall be junior and subject in all respects to the DIP Liens and to the Carve Out, (B) the Second Lien Adequate Protection Parties shall have pursuant to sections 361, 362(d), 363(c), and 364(d) of the Bankruptcy Code, replacement security interests in and Liens upon all of the DIP Collateral (the "Second Lien Adequate Protection Liens"), which Second Lien Adequate Protection Liens shall be junior and subject in all respects to the DIP Liens, the Carve Out, the First Lien Adequate Protection Liens and the Prepetition Liens of the First Lien Adequate Protection Parties, (C) the Third Lien Adequate Protection Parties shall have pursuant to sections 361, 362(d), 363(c), 363(e), and 364(d) of the Bankruptcy Code, replacement security interests in and Liens upon all of the DIP Collateral (the "Third Lien Adequate Protection Liens"), which Third Lien Adequate Protection Liens shall be junior and

subject in all respects to the DIP Liens, the Carve Out, the First Lien Adequate Protection Liens, the Prepetition Liens of the First Lien Adequate Protection Parties, the Second Lien Adequate Protection Liens and the Prepetition Liens of the Second Lien Adequate Protection Parties and (D) the Other Adequate Protection Parties shall have pursuant to sections 361, 362(d), 363(c), 363(e), and 364(d) of the Bankruptcy Code, replacement security interests in and Liens upon all of the DIP Collateral (the "Other Adequate Protection Liens"; and together with the First Lien Adequate Protection Liens, the Second Lien Adequate Protection Liens and the Third Lien Adequate Protection Liens, the "Adequate Protection Liens"), which Other Adequate Protection Liens shall be junior and subject in all respects to the DIP Liens, the Carve Out, and the Adequate Protection Liens of any Prepetition Secured Parties that hold Prepetition Liens senior to the Prepetition Liens of such Other Adequate Protection Party. For the avoidance of doubt, the Adequate Protection Liens are and shall be subject to disgorgement in the event the corresponding Prepetition Liens are avoided or otherwise successfully challenged.

(ii)     Adequate Protection Superpriority Claims. Solely to the extent of any such Diminution of Value, (A) the First Lien Adequate Protection Parties shall have, an allowed superpriority administrative expense claim (the "First Lien Adequate Protection Superpriority Claims"), as provided for in section 507(b) of the Bankruptcy Code, in each of the Cases and any Successor Case of the Debtors, which shall be junior and subject in all respects to the DIP Superpriority Claims and the Carve Out, (B) the Second Lien Adequate Protection Parties shall have, an allowed superpriority administrative expense claim (the "Second Lien Adequate Protection Superpriority Claims"), as provided for in section 507(b) of the Bankruptcy Code, in each of the Cases and any Successor Case of the Debtors, which shall be junior and subject in all respects to the DIP Superpriority Claims, the Carve Out and the First Lien Adequate Protection Superpriority Claims, (C) the Third Lien Adequate Protection Parties shall have, an allowed superpriority administrative expense claim (the "Third Lien Adequate Protection Superpriority Claims"), as provided for in section 507(b) of the Cases and any Successor Case of the Debtors, which shall be junior and subject in all respects to the DIP Superpriority Claims, the Carve Out, the First Lien Adequate Protection Superpriority Claims and the Second Lien Adequate Protection Superpriority Claims and (D) the Other Adequate Protection Parties shall have, an allowed superpriority administrative expense claim (the "Other Adequate Protection Superpriority Claims"; and together with the First Lien Adequate Protection Superpriority Claims, the Second Lien Adequate Protection Superpriority Claims and the Third Lien Adequate Protection Superpriority Claims, the "Adequate Protection Superpriority Claims"), as provided for in section 507(b) of the Bankruptcy Code, in each of the Cases and any Successor Case of the Debtors, which shall be junior and subject in all respects to the DIP Superpriority Claims, the

24

Carve Out, the First Lien Adequate Protection Superpriority Claims, the Second Lien Adequate Protection Superpriority Claims and the Third Lien Adequate Protection Superpriority Claims. The Adequate Protection Superpriority Claims have priority in the applicable Case or Successor Case of the Debtors over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, 1113, or 1114 of the Bankruptcy Code, but are subordinate and junior in all respects to the DIP Superpriority Claims and the Carve Out, it being understood that, subject to paragraph 28 of this Final Order, the Adequate Protection Parties shall not receive or retain any payments, property, or other amounts in respect of their Adequate Protection Superpriority Claims, or granted hereunder or under any Prepetition Secured Party's existing prepetition agreements with the Debtors including without limitation the TEC Prepetition Debt Documents (the "Existing Agreements"), unless and until all DIP Obligations and Carve Out related expenses are indefeasibly paid in full and in cash in accordance with the terms of the respective DIP Documents.

(b)     Notwithstanding anything to the contrary in this Final Order or in any other order of the Court, in determining the relative priorities and rights among the Adequate Protection Parties (including, without limitation, the relative priorities and rights of the Adequate Protection Parties with respect to the adequate protection granted hereunder), such relative priorities and rights shall be governed by this Final Order, the Existing Agreements, and any other valid agreements by and among the Adequate Protection Parties, and the adequate protection rights granted hereunder to each Adequate Protection Party shall have the same relative seniority vis-à-vis the adequate protection rights granted to each other Adequate Protection Party as the prepetition claims of such Adequate Protection Party have relative to the prepetition claims of such other Adequate Protection Party (taking into consideration the entity against which such claims are held or not held). For the avoidance of doubt, nothing in this Final Order grants any Adequate Protection Party any Adequate Protection Superpriority Claims in a

Case or Successor Case of any entity that is not a Borrower or Guarantor under the DIP Documents.

20. **Perfection of Liens.** This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, and the Adequate Protection Liens, without the necessity of executing, filing, or recording any mortgage, security agreement, pledge agreement, financing statement, or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule, or regulation of any jurisdiction to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Agent, for the benefit of the Secured Parties, or the Prepetition Secured Parties to the priorities granted herein. The Borrower or another Debtor may execute, and the DIP Agent, for the benefit of the Secured Parties, and the Prepetition Secured Parties are hereby authorized to execute, file, and/or record mortgages, security agreements, pledge agreements, financing statements, and/or other instruments or documents to evidence the DIP Liens, and the Adequate Protection Liens, respectively, and the Debtors are hereby authorized, promptly upon a demand by the DIP Agent or a Prepetition Secured Party made in accordance with the terms of the DIP Documents or Existing Agreements, as applicable, to execute, file, and/or record any such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents as the respective DIP Agent or Prepetition Secured Party may request; provided, however, that no such execution, filing, or recordation shall be necessary or required in order to create or perfect the DIP Liens or Adequate Protection Liens, and further, if the DIP Agent or a Prepetition Secured Party, in its sole discretion, shall choose to execute, file, and/or record such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents, or otherwise confirm perfection of such Liens, all such instruments and documents

shall be deemed to have been filed or recorded as of the Petition Date.  A copy of this Final Order may, in the discretion of any DIP Agent or Prepetition Secured Party, be filed with or recorded in any filing or recording office in addition to or in lieu of such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents, and each and every federal, state, and local governmental agency, department, or office is hereby directed to accept a copy of this Final Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Final Order and the other DIP Documents, for filing and recording, and to deem this Final Order to be in proper form for filing and recording (provided, that this Final Order shall not affect any transfer or similar taxes due upon any such filing or recording).  Notwithstanding the foregoing, pursuant to any applicable law, the DIP Agent and the Prepetition Secured Parties are hereby authorized (but not required) to file or record financing statements and other filing or recording documents or instruments with respect to the DIP Collateral and DIP Liens and the Adequate Protection Liens, as applicable,  without the signature of any Debtor in such form and in such offices as the DIP Agent and the Prepetition Secured Parties, as applicable, determine appropriate to perfect the security interests of the DIP Agent and the Prepetition Secured Parties, as applicable, under DIP Documents and the Interim Order and/or this Final Order; and DIP Agent and the Prepetition Secured Parties are authorized to use collateral descriptions such as "all personal property" or "all assets", in each case "whether now owned or hereafter acquired", words of similar import or any other description the DIP Agent and/or the Prepetition Secured Parties, each in their sole discretion, so chooses in any such financing statements.

21.    **Section 506(c).**  Except to the extent of the Carve Out, no costs or expenses of administration which have been or may be incurred in the Cases or any Successor Case at any time shall be charged against or recovered from the DIP Collateral, the TEC Prepetition

Collateral, against the DIP Agent, any DIP Lender or any TEC Prepetition Lender, or any of their respective claims, pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

22.    **Fees.**    All fees paid and payable, and costs and expenses reimbursed or reimbursable by the Borrower and the other Debtors to the DIP Agent or any other Secured Party under the DIP Documents are hereby approved.  The Debtors shall promptly pay all such fees, costs, and expenses payable under the DIP Documents in accordance with the DIP Documents, without the necessity of any further application with the Court for approval or payment of such fees, costs, or expenses.  Professionals for the DIP Agent and the DIP Lenders shall not be required to file fee applications, provided, that invoices (subject in all respects to applicable privilege and work product doctrines) shall be provided to counsel for the Debtors, the U.S. Trustee and the official committee of unsecured creditors appointed by the U.S. Trustee (if any is appointed, the "Committee"), which parties shall have fourteen (14) days to object to such invoices.

23.    **Effect of Stipulations on Third Parties.**    The stipulations and admissions contained in the Interim Order and this Final Order with respect to the validity, perfection or amount of any secured creditor's prepetition lien or the waiver of claims against any secured creditor became binding on the Debtors and the Debtors' estates upon entry of the Interim Order and shall be binding on all other parties in interest, including, without limitation, any Committee, unless any Committee or another party in interest (other than any of the Debtors or other Debtors), in each case with standing and requisite authority, has timely commenced a contested matter or adversary proceeding, challenging the amount, validity or enforceability of the TEC Prepetition Indebtedness or the perfection or priority of the TEC Prepetition Liens, or otherwise asserting any objections, claims, or causes of action on behalf of the Debtors' estates against the TEC Prepetition Lenders relating to the TEC Prepetition Indebtedness or the TEC Prepetition

Liens (such adversary proceeding or contested matter, a "Challenge") (provided, however, that not more than $20,000 in the aggregate may be used to pay any allowed fees of a Committee and professionals retained by such Committee incurred in connection with pursuing a Challenge), on or before (a) as to the Committee, the sixtieth (60th) calendar day after the date of appointment of such Committee by the U.S. Trustee, or (b) as to any party in interest other than the Committee, the seventy-fifth (75th) calendar day after the date of entry of the Interim Order ((a) and (b) together, the "Challenge Period"). If no such Challenge is timely commenced as of such date then, without further order of the Court, (x) the claims, Liens, and security interests of the TEC Prepetition Lenders shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Cases and any Successor Case and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount, or otherwise, and (y) without further order of the Court, the Debtors and their estates shall be deemed to have relinquished, released, and waived any and all claims or causes of action against the TEC Prepetition Lenders with respect to the TEC Prepetition Debt Documents or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in paragraph 6 of this Final Order with respect to the validity, perfection or amount of the TEC Prepetition Liens or the waiver of claims against the TEC Prepetition Lenders shall be binding on the Debtors' estates, any Committee, and all parties in interest. If a Challenge is timely commenced, the stipulations contained in paragraph 6 of this Final Order shall be binding on the Debtors' estates and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge, as and when originally filed (ignoring any relation back principles); provided, that if and to the extent a Challenge is withdrawn, denied, or overruled, the stipulations specifically challenged in such Challenge also shall be binding on the Debtors' estates and all parties in interest; provided

further, that if the Cases are converted to cases under chapter 7 of the Bankruptcy Code prior to the expiration of the Challenge Period, a chapter 7 trustee may move for an extension of the Challenge Period, but TEC and all other parties in interest reserve the right to object.

24.    **Indemnity**.  The DIP Agent and the DIP Lenders (and their respective Related Persons) shall be and hereby are indemnified and held harmless by the Debtors in respect of any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court to arise from the gross negligence or willful misconduct of the relevant indemnified person.  No exception or defense in contract, law, or equity exists as to any obligation set forth in this paragraph 24 or in the DIP Documents to indemnify and/or hold harmless the DIP Agent and the DIP Lenders and their respective Related Persons.

25.    **Release**.  Subject to the rights of any party in interest provided in paragraph 23 of this Final Order, in consideration of (i) the DIP Lenders' agreement to the making of postpetition loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the DIP Term Sheet, the DIP Documents and this Final Order, and (ii) the TEC Prepetition Lender's agreement to make loans, advances, providing credit and other financial accommodations to the Debtors pursuant to the provisions of the TEC Prepetition Debt Documents and for the TEC Prepetition Liens to be primed by the DIP Liens and the Carve Out, each Debtor, on behalf of and for itself (collectively, the "Releasors"), shall forever release, discharge and acquit the DIP Agent, the DIP Lenders and the TEC Prepetition Lenders and their respective Related Persons, predecessors-in-interest, successors and assigns (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind,

nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, in respect of events that occurred on or prior to the date hereof; provided, that such release shall not, as to any Releasee, apply with respect to any claim, demand, liability, responsibility, dispute, remedy, cause of action, indebtedness or obligation that is determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the willful misconduct or gross negligence of such Releasee, provided, further, in no event shall any Releasee have any liability to any Releasor or any other person or entity for any special damages, losses or expenses.  Notwithstanding anything to the contrary herein, the Debtors' releases do not extend to (a) any DIP Lender's obligation to make any DIP Loan subject to the terms and conditions hereof and of the DIP Term Sheet, (b) the DIP Agent's or any DIP Lender's obligations to comply in all respects with the terms and conditions hereof and the DIP Term Sheet that are required to be performed by such party (subject to any applicable limitations on such compliance set forth herein or therein) or (c) compliance in all respects by TECC and its successors and assigns with the TEC APA (as defined in the DIP Term Sheet) (subject to any applicable limitations on such compliance set forth therein and subject to the entry of any applicable orders by the Court).

26.    [Intentionally Omitted]

27.    [Intentionally Omitted]

28.    **Disposition of Collateral.**    The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral in any way inconsistent with the terms and conditions of the DIP Documents without the prior written consent of the DIP Agent and an order of this Court, except for sales to the DIP Agent.  In the absence of express

prior written consent, no consent to a sale, transfer, lease, encumbrance, or other disposition of any portion of the DIP Collateral shall be implied from any action, inaction, or acquiescence by the DIP Agent or any other Secured Party. Until all DIP Obligations are paid and satisfied in full and in cash in accordance with the terms of the DIP Documents on terms and conditions acceptable to the DIP Agent, the proceeds of any sale of the DIP Collateral shall be applied in the following order: (i) to pay or fund an escrow account or a restricted account maintained by counsel for the Debtors in the amount of (x) all allowed and unpaid professional fees and disbursements (regardless of when such fees and disbursements become allowed by order of the Court) incurred or accrued by the Debtors at any time on or prior to the date of the closing of the sale in an aggregate amount not exceeding such unpaid professional fees and disbursements reflected on the Budget plus (y) accrued administrative expenses included in the Carve Out, (ii) to pay the fees and expenses of the DIP Agent and the DIP Lenders, (iii) to pay any interest which is then due and payable, (iv) to pay any interest with respect to the principal amount being repaid which has accrued but is not yet due and payable and (v) to pay the principal amount of DIP Loans.

29.    [Intentionally Omitted]

30.    **Modification of Stay; Rights and Remedies Upon Termination.**

(a)    Subject to paragraph 18 of this Final Order, upon the occurrence of a Termination Event, the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Agent, for itself and the benefit of the Secured Parties, to exercise all rights and remedies provided in this Final Order and the other DIP Documents, as applicable, and to take any or all of the following actions without further order of or application to this Court: (i) immediately terminate the Debtors' use of Cash Collateral and cease making any DIP Loans to the Borrower; (ii) immediately declare all

DIP Obligations to be immediately due and payable; (iii) immediately terminate the DIP Facility and the availability of any DIP Loans thereunder; (iv) immediately set off any and all amounts held on account of or owed to the Debtors against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of, or subject to a lien in favor of the DIP Agent, for itself and the benefit of the Secured Parties, for application towards the DIP Obligations; and (v) take any other commercially reasonable actions or exercise any other rights or remedies permitted under this Final Order and the other DIP Documents or applicable law to effect the repayment of the DIP Financing; provided that notwithstanding anything herein to the contrary, the DIP Agent shall not enforce any DIP Liens against the DIP Collateral or exercise any other remedies prior to the expiration of the Default Notice Period.

(b)    The automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided in paragraph 30(a) above, effective following the expiration of the Default Notice Period, unless the Court orders otherwise.  Unless otherwise ordered by the Court, any party in interest's sole recourse with respect to opposing such modification of the automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default.  During the Default Notice Period, the Debtors shall (x) have no right to request extensions of credit under the DIP Facility, other than with the consent of the DIP Agent, and (y) be entitled to an emergency hearing before the Court, with proper notice to the DIP Agent.  The rights and remedies of the DIP Agent, for itself and the benefit of the DIP Lenders, specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent may have under the DIP Documents, or otherwise.  The Debtors shall cooperate fully with the DIP Agent in any permitted exercise of rights and remedies, whether against the DIP Collateral or otherwise.

31.    **Survival of Order.**  The provisions of this Final Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any chapter 11 plan in any of the Cases, (ii) converting any of the Cases to a Successor Case, or (iii) dismissing any of the Cases, and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, Liens, and security interests granted pursuant to this Final Order shall maintain their priority as provided by this Final Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Documents.  The applicable DIP Obligations shall not be discharged by the entry of any order confirming any chapter 11 plan in any of the Cases that does not provide for payment in full of the DIP Obligations, and, only upon the entry of any such order, the Debtors shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

32.    **No Waiver.**  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent, for itself and the benefit of the DIP Lenders, may have to bring or be heard on any matter brought before this Court.

33.    **Reservation of Rights.**  The terms, conditions, and provisions of this Final Order are in addition to and without prejudice to the rights of the DIP Agent, for itself and the benefit of the DIP Lenders, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents, or any other applicable agreement or law, including, without limitation, rights (a) to seek relief from the automatic stay, (b) to seek an injunction, (c) to oppose any future request for use of Cash Collateral or for the granting of any interest in the DIP Collateral, or of priority in favor of any other party, (d) to object to any sale of assets, or (e) to object to applications for allowance or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtors' estates.

34.   **No Consent.**  No action, inaction, or acquiescence by the DIP Agent, including funding the Debtors' operations and the conduct and pursuit of a sale and liquidation process under this Final Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Agent to a charge against the DIP Collateral pursuant to sections 506(c), 552(b), or 105(a) of the Bankruptcy Code.  The DIP Agent shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code and, the "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply to the TEC Prepetition Lenders with respect to the TEC Prepetition Debt Documents or the TEC Prepetition Collateral.

35.   **Binding Effect; Successors and Assigns**.  Except as otherwise provided in the DIP Documents, the provisions of this Final Order shall be binding upon and inure to the benefit of each DIP Agent, the DIP Lenders, the TEC Prepetition Lenders, the Adequate Protection Parties, each of the Debtors, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of any of the Debtors, their estates, or with respect to the property of any of their estates) whether in these Cases, in any Successor Case, or upon dismissal of any Case or Successor Case; provided, however, that the DIP Lenders shall have no obligation to extend any financing to, or permit the use of Cash Collateral or DIP Collateral by, any chapter 7 or chapter 11 trustee or similar representative person appointed for the Debtors' estates.

36.   **Proofs of Claim.**  Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court:

(a)      The DIP Agent and the DIP Lenders shall not be required to file proofs of claim in the Cases or any Successor Case in order to maintain its respective claims with respect

to the DIP Obligations, all of which shall be due and payable in accordance with the Interim Order, this Final Order, and the other DIP Documents, without the necessity of filing any such proof of claim; the statements of claim in respect of the respective DIP Obligations set forth in the Interim Order and this Final Order, together with the evidence accompanying the Motion, and presented at the Interim Hearing and the Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)    The TEC Prepetition Lenders shall not be required to file any proof of claim with respect to any of the TEC Prepetition Indebtedness, all of which shall be due and payable in accordance with the TEC Prepetition Debt Documents, the Interim Order and this Final Order, as applicable, without the necessity of filing any such proof of claim, and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the TEC Prepetition Debt Documents, the Interim Order, this Final Order or the TEC Prepetition Indebtedness, or any other obligations hereunder, or prejudice or otherwise adversely affect the rights, remedies, powers, or privileges of the TEC Prepetition Lenders under the TEC Prepetition Debt Documents; provided, further, that, for the avoidance of doubt, the filing of any proof of claim by the TEC Prepetition Lenders shall not in any way prejudice or otherwise adversely affect such parties' rights, remedies, powers, or privileges under the TEC Prepetition Debt Documents, the Interim Order and this Final Order.

37.    **Order Effective Immediately.**    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

38.    **Final Order Governs**.  In the event of any inconsistency or conflict between any of the terms and provisions of the Interim Order, this Final Order and the DIP Documents, the terms and provisions of this Final Order shall govern.

39.    **Monitoring of Collateral.**  The DIP Agent, and its consultants and advisors, shall be given reasonable access to the Debtors' books, records, assets, and properties.

40.    **Financial Reporting.**  The Debtors shall provide the DIP Agent with the monthly financial reporting given to the U.S. Trustee and all of the financial reporting as required under and in all instances consistent with the DIP Documents.

41.    **Cash Management.**  The Debtors' cash management system shall at all times be maintained (a) in accordance with any order of this Court approving the maintenance of the Debtors' cash management system, and (b) in a manner which is otherwise reasonably satisfactory to the DIP Agent.  The DIP Agent shall be deemed to have "control" (within the meaning of Article 9 of the Uniform Commercial Code) over all such accounts for all purposes of perfection under the Uniform Commercial Code.

42.    **Credit Bidding.**  The DIP Agent and the TEC Prepetition Lenders shall each have the unqualified right to credit bid up to the full amount of the applicable outstanding DIP Obligations and the TEC Prepetition Indebtedness (as applicable), in each case including any accrued interest, in any sale of the DIP Collateral (or any part thereof) or the TEC Prepetition Collateral (or any part thereof), as applicable, without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

43.    **No Third Party Rights.**  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any party, creditor, equity holder, or other

entity other than the DIP Agent, the DIP Lenders the TEC Prepetition Lenders, the Adequate Protection Parties, and the Debtors, and their respective successors and assigns.

44.    **Headings.**  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

45.    **Retention of Jurisdiction.**    This Court retains jurisdiction to interpret, implement, and enforce the provisions of this Final Order and the other DIP Documents.

46.    **Subsequent Reversal or Modification.**  This Final Order is entered pursuant to, _inter alia_, section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting the DIP Agent, the DIP Lenders, the TEC Prepetition Lenders, and the Adequate Protection Parties all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (a) the validity of any obligation, indebtedness, or liability incurred hereunder by the Borrower or any of the other Debtors to the DIP Agent, the DIP Lenders, the TEC Prepetition Lenders or the Adequate Protection Parties prior to the date of receipt by the DIP Agent of written notice of the effective date of such action, (b) the payment of any fees required under this Final Order or the other DIP Documents, or (c) the validity and enforceability of any lien, claim, obligation, or priority authorized or created under this Final Order or pursuant to the other DIP Documents or the TEC Prepetition Debt Documents as of such date. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Borrower or any of the other Debtors to any of the DIP Agent, the DIP Lenders, the TEC Prepetition Lenders or any Adequate Protection Party, prior to written notice being delivered to the DIP Agent, the DIP Lenders, the TEC Prepetition Lenders or any Adequate Protection Party of the effective date of such action, shall be governed in all respects by the original provisions of this Final Order, and the DIP Agent, the DIP Lender or

Adequate Protection Party, as applicable, shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations, or liability.

Dated: April 15, 2015
Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

8950358

39