## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| USA SYNTHETIC FUEL CORPORATION, *et al.*,[1] | : | Case No. 15-10599 (MFW) |
|  | : |  |
| Debtors. | : | (Joint Administration) |
|  | : |  |
|  | : | **RE: Docket No. 6, 91** |

----------------------------------------------------------------- x

### ORDER (I) APPROVING THE SALE OF THE DEBTORS' ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) APPROVING THE STALKING HORSE AGREEMENT, (IV) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] [Docket No. 6] dated March 17, 2015 of

USA Synthetic Fuel Corporation and certain of its affiliates, as debtors and debtors-in-possession

(the "Debtors") pursuant to sections 105(a), 362, 363, 365, 503 and 507 of chapter 11 of title 11

of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") for, *inter alia*, (i) approval of procedures (the "Bidding

Procedures"), in connection with the sale (the "Sale") of certain of the Debtors' assets (the

"Acquired Assets") free and clear of all liens, claims (as defined in section 101(5) of the

Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): USA Synthetic Fuel Corporation (5258); Lima Energy Company (5661); and Cleantech Corporation (6023). The Debtors' address is 312 Walnut Street, Suite 1600, Cincinnati, Ohio 45202.

[2] Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Sale Motion.

of any kind or nature whatsoever, including, but not limited to, all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, mechanics' liens, materialmens' liens and other consensual and non-consensual liens and statutory liens, judgments, demands, rights of first refusal, offsets, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, reclamation claims, demands, guaranties, options, rights, commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, the "Liens"); (ii) authorization to enter into the stalking horse agreement (as amended, the "Agreement"), by and among Debtors USA Synthetic Fuel Corporation, Lima Energy Company, American Future Fuels Corporation (the "Purchaser") and Third Eye Capital Corporation (the "Assignor") and consummate the transactions contemplated thereby (the "Transactions"), and (iii) approval of the assumption and assignment of certain executory contracts and unexpired leases (such executory contracts and unexpired leases that are proposed to be assumed and assigned, the "Assumed Contracts"); after holding a hearing on April 15, 2015 (the "Bidding Procedures Hearing") the Bankruptcy Court having entered an order dated April 16, 2015 (the "Bidding Procedures Order")

2

[Docket No. 91], authorizing the Debtors to solicit and consider offers for the Acquired Assets and conduct an auction ("Auction") in accordance with the terms and conditions of the Bidding Procedures and approving, *inter alia*, (i) the Bidding Procedures; (ii) the form and manner of notice of the Auction and Sale Approval Hearing (defined below); and (iii) the manner in which the notice of the assignment and proposed cure amounts of the Assumed Contracts (the "Notice of Assignment and Cure") would be provided and the procedures related to the assignment of the Assumed Contracts to the Purchaser; and the Bankruptcy Court having conducted a hearing on the Sale Motion on June 1, 2015 (the "Sale Approval Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement; and the Bankruptcy Court having reviewed and considered the Sale Motion, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Approval Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Approval Hearing, the *Declaration of Dr. Steven C. Vick In Support of First Day Relief* [Docket No. 2], the *Declaration Of Jeffrey D. Henderson In Support Of Debtors' Motion For An Order Authorizing And Approving (A) The Sale Of Certain Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests; (B) The Asset Purchase Agreement And Ancillary Agreements; (C) The Assumption And Assignment Of Executory Contracts And Unexpired Leases; And (D) Related Relief* [Docket No. 147] and these chapter 11 cases and proceedings, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

      A.    **Findings and Conclusions.**  The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To

the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction over the Sale Motion and the Transactions pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    **Statutory Predicates**.  The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105, 362, 363 and 365, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.

D.    **Notice**.  Proper, timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the Sale, the Transactions, the assumption and assignment of the Assumed Contracts, the Auction, the Sale Approval Hearing, or of the entry of this Order have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007, and Local Rule 6004-1, and in compliance with the Bidding Procedures Order. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, including, without limitation, the Sale, the Transactions, the assumption and assignment of the Assumed Contracts, the Auction, the Sale Approval Hearing, or of the entry of this Order is necessary or shall be required.

E.    A Notice of Assignment and Cure has been provided to each of the non-Debtor counterparties to the Assumed Contracts identified on the list(s) the Debtors have filed with the Bankruptcy Court, all in accordance with and as provided by the Bidding Procedures

Order and subject to the Purchaser's right to modify or further designate the schedule of Assumed Contracts to be assigned to the Purchaser. The Debtors supplemented the Notice of Assignment and Cure on May 29, 2015 to provide adequate assurance information regarding the Buyer's ability to perform under the Assumed Contracts. *See Supplemental Notice Of Proposed (I) Assumption, Assignment, And/Or Transfer Of Certain Executory Contracts And Unexpired Leases And (II) Cure Amounts* (the "Supplemental Notice") [Docket No. 146]

    F.  **Opportunity to Object**. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

    G.  **Title in the Acquired Assets**. The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

    H.  **Business Justification**. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, assume and assign the Assumed Contracts, and sell the Acquired Assets under section 363 of the Bankruptcy Code. Such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors and all other parties in interest. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated quickly; (ii) the Agreement constitutes the highest or otherwise best offer for the Acquired Assets; (iii) the Agreement and the Closing will present the best opportunity to realize the remaining value of the Debtors on a going concern basis and to avoid further decline and devaluation of the Debtors' businesses; and (iv) unless the Sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, potential creditor recoveries may be substantially diminished. Entry of an order

approving the Agreement and all provisions thereof is a necessary condition precedent to the Debtors and the Purchaser consummating the Transactions.

I.      **Opportunity to Bid**. The Debtors and their professionals marketed the Acquired Assets and conducted the marketing and sale process as set forth in the Sale Motion and in accordance with the Bidding Procedures Order. The Auction process set forth in the Bidding Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets.

J.      [Intentionally Omitted]

K.      **Highest or Otherwise Best Offer**. The total consideration provided by the Purchaser for the Acquired Assets is the highest or otherwise best offer received by the Debtors.

L.      **Good Faith Purchaser**. The Agreement and the Transactions contemplated thereby have been negotiated by the Debtors and the Purchaser in good faith, at arm's length and without collusion or fraud. The terms and conditions of the Agreement and the Transactions, including the total consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the Transactions are in the best interest of the Debtors, their creditors and their estates.

M.      The Purchaser is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the sale and assignment of the Acquired Assets and the Transactions.

N.      The Agreement was not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n). The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code. The Purchaser is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

O.      The Purchaser will be acting in good faith in consummating the Transactions at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d). The Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

P.      **Corporate Power and Authority**.  Subject to entry of this Order, the Debtors and the Purchaser have full corporate power and authority to execute and deliver the Agreement and to perform all of their respective obligations thereunder, and the sale and assignment of the Acquired Assets and the Assumed Contracts has been duly and validly authorized by all corporate authority necessary to consummate the Transactions. No consents or approvals, other than as expressly provided for in the Agreement and the entry of this Order, are required by the Debtors to consummate the Transactions.

Q.      **Assumption and Assignment in Best Interests**.  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. Accordingly, such assumption and assignment is reasonable, enhances the value of the Debtors' estates and does not constitute unfair discrimination.

R.     **Cure/Adequate Assurance**.  The Debtors have provided adequate assurance of cure of any default existing prior to the Closing under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts within the meaning of Bankruptcy Code section 365(b)(1)(B).  The Purchaser, or its designee, has provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(C).  The non-Debtor parties to the Assumed Contracts were given notice and the opportunity to object to the Notice of Assumption and Cure and are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

S.     **Free and Clear**.  The Debtors are the sole and lawful owners of the Acquired Assets.  Except as otherwise provided in the Agreement, the sale and assignment of the Acquired Assets to the Purchaser or its designee will be, as of the Closing, a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest the Purchaser or its designee with all right, title and interest of the Debtors to the Acquired Assets free and clear of all Liens with any Liens to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing.  The Purchaser would not enter into the Agreement to acquire the Acquired Assets if the sale of the Acquired Assets were not free and clear of all Liens, or if the Purchaser would, or in the future could, be liable for any such Liens. A sale of the Acquired Assets other than one free and clear of all Liens would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale

contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T.    **Satisfaction of 363(f) Standards**.  The Debtors may sell and assign the Acquired Assets free and clear of all Liens, because, with respect to each creditor asserting a Lien, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied. Those holders of Liens who did not object or who withdrew their objections to the Sale, the Transactions or any Notice of Assignment and Cure are deemed to have consented to the Sale Motion and sale and assignment of the Acquired Assets to the Purchaser or its designee pursuant to Bankruptcy Code section 363(f)(2). Those holders of Liens who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, if any, attach to the proceeds of the Transactions ultimately attributable to the Acquired Assets in which such holders allege a Lien, in the same order of priority, with the same validity, force and effect that such holder had prior to the Transactions, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

U.    **No Successor Liability**.  The Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors other than those liabilities expressly assumed under the Agreement (the "Assumed Liabilities").

V.    The Transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors

or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates. Other than the Assumed Liabilities, the Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the liabilities of the Debtors specifically excluded under the Agreement (the "Excluded Liabilities"), and the Debtors will release and forever discharge the Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, assented or unassented, fixed or contingent, relating to the Transactions, and the sale and assignment of the Acquired Assets and the Assumed Contracts except for liabilities and obligations under the Agreement. The Bankruptcy Court finds that the Purchaser would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

        W.    **No Fraudulent Transfer**.  The Transactions are not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the Purchaser are or will be entering into the Transactions fraudulently.

        X.    **Fair Consideration**.  The consideration constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Agreement represents a fair and

reasonable offer to purchase the Acquired Assets and assume or acquire liabilities under the circumstances of the Debtors' cases. Approval of the Agreement and the consummation of the Transactions is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

Y.      **Compliance with Bankruptcy Code.**  The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the effective date of assignment.

Z.      **Transactions not a Sub Rosa Plan**.  The sale and assignment of the Acquired Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Transactions do not constitute a sub rosa chapter 11 plan.

AA.      **Time is of the Essence**.  Time is of the essence in consummating the Transactions. In order to maximize the value of the Debtors' assets, it is essential that the sale and assignment of the Acquired Assets and the Assumed Contracts occur within the time constraints set forth in the Agreement. Specifically, the Transactions must be approved and consummated promptly in order to preserve the remaining viability of the business subject to the Sale as a going concern, to maximize the value to the Debtors, their estates, their creditors, and all other parties in interest. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

The Transactions contemplated by the Agreement are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1. **Relief Granted**. The relief requested in the Sale Motion is granted in its entirety.

2. **Objections Overruled**. All objections and responses to the Sale Motion, this Order or the relief granted herein that have not been overruled, withdrawn, waived, settled or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3. **Notice**. Notice of the Sale Motion, including without limitation, the transactions set forth in the Agreement and the assumption and assignment of the Assumed Contracts, the Auction, the Sale Approval Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007 and Local Rule 6004-1.

4. **Prior Findings of Fact and Conclusions of Law**. The Bankruptcy Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

5. **Approval**. The Agreement and the Transactions are hereby approved and authorized in all respects, and the Debtors are hereby authorized and empowered and directed to enter into, and to perform their obligations under, the Agreement and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Agreement and the Transactions.

6. **Good Faith Purchaser**. The Purchaser is a good faith purchaser of the Acquired Assets and is hereby granted and is entitled to all of the protections provided to a good

faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all respects by the original provisions of this Order or the Agreement, as the case may be.

7.    **Section 363(n) of the Bankruptcy Code**.  The sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

8.    **Authorization of Performance by the Debtors**.  The Debtors are authorized to execute, deliver and fully perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order, and the Transactions, including, without limitation, deeds, assignments, bill of sale, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Acquired Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of the Bankruptcy Court.

9.      The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.[3] The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

10.     The Purchaser shall have no obligation to proceed with the Closing until all conditions precedent set forth in the Agreement to their obligations to do so have been met, satisfied or waived.

11.     **Allocation by the Purchaser**.  The Purchaser is hereby authorized in connection with the consummation of the Transactions to allocate the Acquired Assets and the Assumed Contracts among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Acquired Assets or the rights under any Assumed Contracts to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

---

[3]     This Order does not constitute an exemption from transfer or similar taxes within the meaning of 11 U.S.C. §1146 (a) as held by the Supreme Court in the case of <u>Florida Dept. of Revenue v. Picadilly Cafeterias</u>, 554 U.S. 33 (2008).

12.    **Valid Transfer**.  Effective as of the Closing (a) the sale and assignment of the Acquired Assets and the Assumed Contracts by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets and the Assumed Contracts notwithstanding any requirement for approval or consent by any person and vests the Purchaser or its designee with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Liens, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to such Assumed Liabilities.

13.    **Free and Clear**.  Except to the extent specifically provided in the Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and assign the Acquired Assets and the Assumed Contracts to the Purchaser. The sale and assignment of the Acquired Assets and the assignment of the Assumed Contracts to the Purchaser vests the Purchaser or its designee with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens, Excluded Liabilities, and other liabilities of any kind or nature whatsoever, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens to attach only to the proceeds of the sale and assignment of the Acquired Assets with the same priority, validity, force, and effect as they now have in or against the Acquired Assets. The Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Acquired Assets free and clear of all Liens and Excluded Liabilities in accordance with Local Rule 6004-1. Following the Closing, no holder of any Lien on the Acquired Assets may interfere with the Purchaser's or its designee's use and enjoyment of the

Acquired Assets based on or related to such Lien, or any actions that the Debtors may take in their chapter 11 cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Transactions or by this Order.

        14.    The term "Liens" shall include, among other things, all liens , claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of any Debtor; (4) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor liability, including any theories on product liability grounds; and (8) to the fullest extent permitted by law, any environmental or other  liens, claims (as defined in section 101(5) of the Bankruptcy Code),

encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature

arising from existing conditions on or prior to the Closing (as defined in the Agreement)

(including, without limitation, the presence of hazardous, toxic, polluting or contaminating

substances  or waste) that may be asserted on any basis, including, without limitation, under the

Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S. C. §§ 9601,

et seq., or other state statute.

   15. The provisions of this Order authorizing the sale and assignment of the

Acquired Assets free and clear of Liens and the Excluded Liabilities, shall be self-executing, and

neither the Debtors nor the Purchaser shall be required to execute or file releases, termination

statements, assignments, consents, or other instruments in order to effectuate, consummate and

implement the provisions of this Order.

   16. **Direction to Creditors**.  On the Closing Date (as defined in the

Agreement), each of the Debtors' creditors is authorized and directed to execute such documents

and take all other actions as may be reasonably necessary to release its Liens in the Acquired

Assets, if any, as such Liens may otherwise exist.

   17. [Intentionally Omitted]

   18. **Direction to Government Agencies**.  Each and every filing agent, filing

officer, title agent, recording agency, governmental department, secretary of state, federal, state

and local official, and any other persons and entity who may be required by operation of law, the

duties of their office or contract, to accept, file, register, or otherwise record or release any

documents or instruments or who may be required to report or insure any title in or to the

Acquired Assets, is hereby authorized and directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the

Agreement and this Order.[4]  All such entities described above in this paragraph are authorized to strike all recorded Liens against the Acquired Assets from their records, official and otherwise.

19.    **Direction to Surrender Possession or Control**.  Except as otherwise set forth in the Agreement, all persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Acquired Assets are directed to surrender possession or control of the Acquired Assets to the Purchaser or its designee on the Closing Date or at such time thereafter as the Purchaser may request.

20.    **Licenses and Permits**.  To the greatest extent available under applicable law and subject to section 365(c)(1) of the Bankruptcy Code, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Assumed Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date and such licenses or permits of the Debtors shall remain in place for the Purchaser's benefit until new licenses and permits are obtained.

21.    [Intentionally Omitted]

---

[4]    As noted above, this Order does not constitute an exemption from transfer or similar taxes within the meaning of 11 U.S.C. §1146 (a) as held by the Supreme Court in the case of <u>Florida Dept. of Revenue v. Picadilly Cafeterias</u>, 554 U.S. 33 (2008).

22.    **Transfer of Title and Interests**.  All of the Debtors' interests in the Acquired Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser or its designee. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets including the Assumed Contracts acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Acquired Assets, including the Assumed Contracts, to the Purchaser or its designee.

23.    **Fair Consideration**.  The consideration provided by the Purchaser to the Debtors pursuant to the Agreement for the purchase of the Acquired Assets and assignment of the Assumed Contracts constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

24.    **No Successor Liability**.  The Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the Transactions contemplated by the Agreement or any other event occurring in the chapter 11 cases under any theory of law or equity, (b) deemed to have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The Purchaser or the Assignor shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the

Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Except for the Assumed Liabilities, the transfer of the Acquired Assets and the Assumed Contracts to the Purchaser or its designee under the Agreement shall not result in (i) the Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Acquired Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Acquired Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens or Excluded Liability, or (iii) the Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Acquired Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Agreement. In the event that Purchaser elects to be treated as a successor employer under section 3121(a)(1) of the Internal Revenue Code, or makes an election to assume, on an employee by employee basis, immigration-related liabilities with respect to former employees of the Debtors hired by the Purchaser, the Purchaser shall not by reason of any such election be deemed to have assumed any other liabilities or to be a successor for any other purpose.

25.    Without limiting the effect or scope of the foregoing, as of the Closing Date, the Purchaser, the Assignor and each of their affiliates and their respective successors,

assigns, members, partners, principals and shareholders (or equivalent) shall have no successor

or vicarious liabilities of any kind or character, including, but not limited to, any theory of

antitrust, environmental, successor or transferee liability, labor law, de facto merger or

substantial continuity, whether known or unknown as of the Closing Date, now existing or

hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated

with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date,

including, but not limited to, liabilities on account of any taxes arising, accruing or payable under,

out of, in connection with, or in any way relating to, the Acquired Assets or the Assumed

Contracts prior to the Closing.

     26.   **Injunction**.  Except to the extent expressly included in the Assumed

Liabilities, all persons and entities, including, but not limited to, the Debtors, employees, former

employees, all debt security holders, administrative agencies, governmental tax and regulatory

authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders,

lessors, warehousemen, customs brokers, freight forwarders, carriers and other parties in

possession of any of the Acquired Assets at any time, trade creditors and all other creditors,

holding Liens of any kind or nature whatsoever against or in the Debtors or in the Debtors'

interests in the Acquired Assets (whether legal or equitable, secured or unsecured, matured or

unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior

or subordinated), arising under or out of, in connection with, or in any way relating to, the

Debtors, the Acquired Assets, the Assumed Contracts, the operation of the Debtors' business

before the Closing Date, the Transactions, or the transfer of the Acquired Assets and the

Assumed Contracts to the Purchaser or its designee, shall be and hereby are forever barred,

estopped and permanently enjoined from asserting, prosecuting, commencing, continuing or

otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Purchaser, or any affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Acquired Assets. Notwithstanding anything to the contrary herein, the Debtors shall not be barred, estopped or enjoined from asserting, prosecuting, commencing, continuing or otherwise pursuing in any manner any and all rights, claims, actions and the like with respect to (a) any DIP Lender's obligation to make any DIP Loan subject to the terms and conditions of the DIP Orders and of the DIP Term Sheet, (b) the DIP Agent's or any DIP Lender's obligations to comply in all respects with the terms and conditions of the DIP Orders and the DIP Term Sheet that are required to be performed by such party (subject to any applicable limitations on such compliance set forth herein or therein) or (c) compliance in all respects by the Purchaser with the Agreement and this Order.[5] Following the Closing Date, no holder of a Lien in the Debtors shall interfere with the Purchaser's or its designee's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtors may take in the Debtors' cases.

27.    The Purchaser has not assumed and is not otherwise obligated for any of the Debtors' liabilities other than the Assumed Liabilities and the Purchaser has not acquired any of the Excluded Assets (as defined in the Agreement). Consequently, all persons, Governmental

---

[5]    Unless defined elsewhere herein, capitalized terms used in this sentence shall have the meanings ascribed to them in the *Final Order (I) Authorizing Debtors To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363, And 364, (II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To 11 U.S.C. §§ 364 And 507, (III) Authorizing Use Of Cash Collateral Pursuant To 11 U.S.C. § 363, And (IV) Providing Adequate Protection To Prepetition Secured Lenders Pursuant To 11 U.S.C. §§ 361, 362, 363, 364, And 507* [Docket No. 84].

Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Acquired Assets, including asserting any setoff, right of subrogation of any kind, to recover any Liens or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any Lien on the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or cause of action against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets.

28. **No Bulk Sales; No Brokers**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions. Except as it relates to Sellers' retention and engagement of Asgaard Capital LLC, no brokers were involved in consummating the Sale or the Transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the Transactions.

29. **Fees and Expenses**. Any amounts payable by the Debtors to the Purchaser under the Agreement or any of the documents delivered by the Debtors in connection with the Agreement shall be paid in the manner provided in the Agreement without further order of the Bankruptcy Court, shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by agreement with the Purchaser or its successors or assigns.

30. **Assumption and Assignment of Assumed Contracts**. Under sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Transactions, the Debtors' assumption and assignment of the Assumed Contracts to the Purchaser

or its designee free and clear of all Liens and Excluded Liabilities pursuant to the terms set forth in the Agreement, as modified by the terms of any amendments reached directly by the Purchaser with the respective counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. Each counterparty to the Assumed Contracts is hereby forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Purchaser or its designee, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with, or in any way related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing.

31.     The Assumed Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser or its designee shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts.

32.     **Adequate Assurance**.  Subject to the terms of the Supplemental Notice, the Purchaser has provided adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser or its designee of the Assumed Contracts have been satisfied.

33.    **Anti-Assignment Provisions Unenforceable**. No sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition Debtors' assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-Debtor party to such Assumed Contracts; (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assumed Contracts, or modification of any term or condition upon the assignment of an Assumed Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e). Subject to section 365(c)(1) of the Bankruptcy Code, the entry of this Order constitutes the consent of the non-Debtor parties to the Assumed Contracts to the assumption and assignment of such agreements. All Assumed Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the appropriate cure amount, if any, by the Debtors.

34.    **No Fees for Assumption and Assignment**. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

35.    **Cure Amounts**. All defaults or other obligations shall be deemed cured by the payment or other satisfaction of the cure amounts, if any, associated with the Assumed

Contracts (the "Cure Amounts"). Except for the Cure Amounts, if any, there are no other defaults existing under the Assumed Contracts.

36.    **Notice of Assumption and Assignment**.  The Debtors have served all of the non-Debtor counterparties to the Assumed Contracts, identified on the lists the Debtors have filed with the Bankruptcy Court, by first class mail, a Notice of Assignment and Cure that included (i) the title of the Assumed Contract, (ii) the name of the counterparty to the Assumed Contract, (iii) any applicable Cure Amounts, (iv) the identity of the Assignee, and (v) the deadline by which any such Assumed Contract counterparty must file an objection ("Objection") to the proposed assumption and assignment.  No other or further notice is required.

37.    **Objections to Assumption and Assignment**.  If a timely Objection is received and such Objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such Objection at a later date set by the Bankruptcy Court. The pendency of a dispute relating to a particular Assumed Contract shall not, in the discretion of the Purchaser, prevent or delay the assumption and assignment of any other Assumed Contracts or the Closing.

38.    Any non-Debtor counterparty to the Assumed Contracts designated to be assumed and assigned to the Purchaser or its designee who does not file an Objection by the applicable deadline as set forth in the Notice of Assignment and Cure shall thereafter be barred from objecting or asserting monetary or non-monetary defaults with respect to any such Assumed Contract and such Assumed Contract shall be deemed assumed by the Debtors and assigned to the Purchaser or its designee on the Closing Date.  If an Objection to an Assumed Contract has been filed only with respect to the cure amount listed on the Notice of Assignment and Cure and the Debtors have not filed, upon direction by the Purchaser, a Declaration of No

Objection to such Assumed Contract as to assumption and assignment only, then the assumption and assignment of such Assumed Contract is not approved by this Order.

39.    For the avoidance of doubt, the assumption and assignment of all Assumed Contracts is subject to the Purchaser's right to withdraw the designation of a specific Assumed Contract prior to the date the assumption and assignment of such Assumed Contract is approved by the Court.

40.    **Compliance with Anti-Assignment Act**.  Nothing in this Order shall interfere with the applicability of the Anti-Assignment Act, 41 U.S.C. §§ 15 *et seq*. or otherwise affect the rights of the United States under the Act.

41.    **Direction to Assumed Contracts Counterparties**.  All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

42.    **Release and Discharge**.  Other than the Assumed Liabilities, the Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors and their estates are deemed to release and forever discharge the Purchaser, the Assignor and each of their affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever,

known or unknown, fixed or contingent, relating to the Transactions, the sale and assignment of the Acquired Assets and the Assumed Contracts, except for liabilities and obligations expressly assumed under the Agreement. Notwithstanding anything to the contrary herein, the Debtors' releases do not extend to (a) any DIP Lender's obligation to make any DIP Loan subject to the terms and conditions of the DIP Orders and of the DIP Term Sheet, (b) the DIP Agent's or any DIP Lender's obligations to comply in all respects with the terms and conditions of the DIP Orders and the DIP Term Sheet that are required to be performed by such party (subject to any applicable limitations on such compliance set forth herein or therein) or (c) compliance in all respects by the Purchaser with the Agreement and this Order.[6]

43. **Amendments**. Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements. At the sole discretion of the Purchaser, the Debtors and the Purchaser are expressly authorized, without further order of the Bankruptcy Court, to execute an amendment to the Agreement to provide for the Closing to occur on one or more Closing Dates. Any material modification, amendment, or supplement to the Agreement must be approved by Order of the Bankruptcy Court following a motion on notice to all interested parties.

---

[6] Unless defined elsewhere herein, capitalized terms used in this sentence shall have the meanings ascribed to them in the *Final Order (I) Authorizing Debtors To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363, And 364, (II) Granting Liens And Superpriority Claims To Postpetition Lenders Pursuant To 11 U.S.C. §§ 364 And 507, (III) Authorizing Use Of Cash Collateral Pursuant To 11 U.S.C. § 363, And (IV) Providing Adequate Protection To Prepetition Secured Lenders Pursuant To 11 U.S.C. §§ 361, 362, 363, 364, And 507* [Docket No. 84].

44.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

45.    **Binding Order**.  This Order and the Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of any Debtor (whether known or unknown), all non-Debtor parties to any Assumed Contracts, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.  The Agreement and Transactions shall not be subject to rejection or avoidance under any circumstances. This Order and the Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and its respective successors and assigns.

46.    **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Time is of the essence in closing the Transactions referenced herein, and the

Debtors and the Purchaser intend to close the Transactions as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

47.     **Lift of Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Bankruptcy Court, to allow the Purchaser to deliver any notice provided for in the Agreement and allow the Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

48.     **Retention of Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects and (b) to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens.

49.     **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or any other order in the Debtors' cases (including any order entered after any conversion of these cases into cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Agreement or this Order.

50.    **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transactions, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Purchaser its right, title and interest in and to the Acquired Asset and the Assumed Contracts.

51.    **Governing Terms**.  To the extent this Order is inconsistent with any prior order or pleading in these chapter 11 cases, the terms of this Order shall govern. To the extent there is any inconsistency with between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of the Agreement and such documents shall govern.

Dated: Wilmington, Delaware
      June ___, 2015

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE